IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| ERIC J. PAYNE | § | |
| | § | |
| v. | § | |
| | § | |
| JOHN MCHUGH, SECRETARY OF THE | § | CAUSE NO. 5:07cv162 |
| ARMY | § | (JURY DEMANDED) |
| | § | |
| | § | |

---

## PLAINTIFF ERIC J. PAYNE'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Table of Contents

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................................. 1

PAYNE'S PREVIOUS MARIJUANA USE ..................................................................... 3

ARGUMENT AND AUTHORITIES ............................................................................... 4

I.    EVIDENCE THAT PAYNE WAS REGARDED AS DISABLED ...................................... 4

II.   THE ARMY IS NOT ENTITLED TO SUMMARY JUDGMENT ON PAYNE'S CLAIMS FOR DISABILITY
DISCRIMINATION. ............................................................................................ 5

      A.   PAYNE ESTABLISHED A PRIMA FACIE CASE OF DISABILITY DISCRIMINATION. ................... 5

           a.   PAYNE WAS DISABLED. ..................................................................... 5

           b.   PAYNE WAS REGARDED AS DISABLED. ..................................................... 6

      B.   PAYNE'S DISABILITY WAS A MOTIVATING FACTOR IN HIS REMOVAL. .............................. 9

III.  THE ARMY IS NOT ENTITLED TO SUMMARY JUDGMENT ON PAYNE'S CLAIMS FOR
RETALIATION. .............................................................................................. 11

      A.   PAYNE STATED A CLAIM FOR RETALIATION BASED ON HIS EEO COMPLAINT. ................ 11

      B.   PAYNE ESTABLISHED A PRIMA FACIE CASE OF RETALIATION. ........................................ 12

           a.   PAYNE ENGAGED IN A PROTECTED ACTIVITY. ........................................... 12

           b.   EVIDENCE OF RETALIATION. ............................................................... 13

IV.   EVIDENCE OF PRETEXT. ............................................................................... 16

CONCLUSION ................................................................................................. 18

## Exhibit Index

| **Exhibit No.** | **Description** | **MSJ Page No.** |
|---|---|---|
| Ex. A | No. 11, Def. Response to Interrogatories | 4 |
| Ex. B | Declaration for Federal Employment | 4 |
| Ex. C | Label | 11, 18 |
| Ex. D | Notice of Right to File | 14 |
| Ex. E | Formal Complaint of Discrimination | 13, 14, 15 |
| Ex. F | CPAC Letter | 15 |
| Ex. G | CPAC Fax | 15, 16, 17 |
| Ex. H | Weyerhaeuser Letter | 15 |
| Ex. I | Parker Statement | 6, 7 |
| Ex. K | Dinsmore Email | 9 |
| Ex. L | Dispatch Email | 9 |
| Ex. M | Chandler Note | 6, 7, 8, 11 |
| Ex. N | Payne Chart | 6, 11 |
| Ex. O | Chronological Record of Medical Care | 11, 18 |
| Ex. P | Pagley Removal Letter | 8, 10, 12 |
| Ex. Q | Solvay Doc. | 2 |
| Ex. R | Chandler Note of 6/20/06 | 11, 19 |
| Ex. T | Ford Email | 11, 19 |
| Ex. U | Ford Notes | 3, 11, 19 |
| Ex. V | MRO Detail Report | 10, 11, 18, 19 |
| Ex. W | Ford Removal Letter | 10, 11, 18 |
| Ex. X | Dinsmore Depo | |
| | p. 20 | 8 |
| | p. 34 | 9 |
| | p. 40 | 11, 18 |
| | p. 9 | 7 |
| | pp. 15-16 | 7 |
| | pp. 30-33 | 9 |
| | pp. 521-53 | 9 |
| | pp. 52-53 | 9 |
| Ex. Y | Ford Depo | |
| | pp. 24-25 | 12 |

Ex. Z    King Depo
  pp. 19-20 ...................................................................................................... 15
  pp. 25-27 ...................................................................................................... 17
  pp. 37-38 ...................................................................................................... 16
  pp. 9-10 ....................................................................................................... 16
Ex. AA   Miller Depo
  pp. 12-13 ...................................................................................................... 16
Ex. BB    Pagley Depo
  p. 32 ............................................................................................................. 12
  pp. 23-24 ........................................................................................................ 8
  pp. 28-29 ...................................................................................................... 17
  pp. 31-32 ...................................................................................................... 18
  pp. 37-38 ........................................................................................................ 9
  pp. 8-9 ............................................................................................................ 8
Ex. CC    Payne Depo
  p. 69 ............................................................................................................. 15
  p. 82 .............................................................................................................. 6
  p. 86 .............................................................................................................. 7
  pp. 65-68 ...................................................................................................... 13
  pp. 68-70 ...................................................................................................... 14
  pp. 85-86 ........................................................................................................ 6
Ex. DD    Jackie Payne Depo
  pp. 118-119 ..................................................................................................... 7
  pp. 150-151 ................................................................................................... 6, 7
  pp. 72-73 ........................................................................................................ 6



IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

ERIC J. PAYNE                              §
                                          §
v.                                        §
                                          §
JOHN MCHUGH, SECRETARY OF THE             §       CAUSE NO. 5:07cv162
ARMY                                      §       (JURY DEMANDED)
                                          §
                                          §

---

### PLAINTIFF ERIC J. PAYNE'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**TO THE HONORABLE U.S. MAGISTRATE JUDGE:**

COMES NOW, ERIC J. PAYNE, Plaintiff herein, and files Plaintiff's Response to

Defendant's Motion for Summary Judgment as follows:

### STATEMENT OF UNDISPUTED MATERIAL FACTS

Payne was employed as a GS-7 firefighter/basic EMT at the Red River Army Depot

("RRAD") from June 16, 2000 to December 7, 2006.  HT 185:15[1]  In December of 2004, Payne

was diagnosed with a generalized anxiety disorder and prescribed Willbutrin, Xanax, and

Marinol by Dr. Robert P. Chandler.  HT 131:11.  Payne filled his Marinol prescription on

December 14, 2004 at Sherrill's pharmacy in Broken Bow, Oklahoma.  R.361.[2]  The prescription

---

[1] "HT" refers to the transcript of the March 20, 2008 hearing before the MSPB, filed under seal in this case on November 5, 2009 (Docket No. 28).  Citations to the transcript in this motion refer to the copy of the transcript submitted with Defendant's Motion for Summary Judgment on Non-Discrimination Claim.

[2] "R." refers to the MSPB administrative record filed under seal in this case on June 24 and 26, 2009 (Docket Nos. 42 & 44).  Page number citations refer to the Bates numbers in the lower right-hand corner of the record.  Citations

---

consisted of two bottles of Marinol each containing 25 pills.  HT 194:11.  Payne testified that he only took the pills from the first bottle.  HT 195:11.  In March of 2006, his symptoms returned and he scheduled another appointment with Dr. Chandler, who gave him a second prescription for Marinol.  HT 198:6.  Instead of filling the second prescription, however, Payne took the Marinol remaining from the bottle he received in December of 2004.  HT 198:19-23.

Payne took a leave of absence in March 2006 related to his condition.  R.102. On March 24, 2006 he visited the RRAD Occupational Clinic to be cleared to return to duty.  HT 205:3-9; R.102.  Payne informed the clinic that he was taking Xanax, Welbutrin, and Marinol during the examination.  HT 205:3-9; R.102.

On May 31, 2006, Payne was called to take a random urinalysis test.  HT 19:15-20:8. Payne's urine samples were sent to Pembrooke Occupational Health ("Pembrooke"), the Department of Defense's Drug Testing Laboratory in Richmond, Virginia.  HT 26:2-3; R.179. The test results showed Payne's urine to be positive for THC, the active ingredient in marijuana. R. 181; HT 27:14-25.  It is undisputed that the presence of Marinol will cause a false positive for THC in a urinalysis exam.  HT 70:15-71:3; Ex. Q (Solvay Doc).

On June 14, 2006, Payne received a phone call from an individual at Pembrooke informing him of the positive test results.  HT 199:10-25; R. 181-82.  Payne told the individual that there was a mistake and cited his prescription medications as the likely cause of the positive test.  HT 201:1-25.  Payne faxed the lab a copy of the label from his Marinol bottle on June 15, 2006.  R. 181-82.  The lab called Payne again on June 21, 2009 to inform him they would not

---

to the record in this motion refer to the copy of the record submitted with Defendant's Motion for Summary Judgment on Non-Discrimination Claim.

accept the label from December 14, 2004.  HT 202:1-14; R. 181-822.  After Payne explained his use of the leftover Marinol from December of 2004, the lab asked him to provide a note from the prescribing physician.  HT 202:20-22.  Payne complied, faxing a letter from Dr. Chandler that stated he was being treated with Marinol.  HT 202:20-22; R. 104.

Dr. Cametas, the MRO from Pembrooke, testified that someone at Pembrooke called Dr. Chandler's office and was told by his nurse, Angel Bailey, that there was no mention of Marinol in Payne's chart.  R. 182; HT 69:1-15.  It should be noted, however, that Payne's chart clearly shows he was being treated with Marinol on March 21, 2006.  R. 282.

Larry Ford, the Director of Public Works at RRAD, testified that he made the decision to remove Payne based on the positive test and his communications with Cametas.  HT 107:17-108:2; 115:1-13.  Ford testified that he did not believe Payne was being treated with Marinol because "The prescription was for 2004, two year old prescription.  The doctor could not confirm that he had a more current prescription.  So there was doubt in my mind that he was currently being treated with that."  HT 116:22-25.  Records subsequently produced during discovery in the instant action indicate that Cametas had, in fact, spoken to Dr. Chandler, who confirmed he had given Payne a prescription for Marinol.  Ex. U (Ford Notes).  Cametas informed Ford of this fact on September 26, 2006, well before he removed Payne on December 7, 2006.  *Id.*

### PAYNE'S PREVIOUS MARIJUANA USE

The Army has repeatedly emphasized Payne's use of marijuana in the past to imply that his drug test in 2006 was caused by illegal marijuana instead of Marinol.  As a preliminary matter, Payne's positive drug test with the Navy on June 29, 1993 is completely irrelevant to this case because the Army was unaware of it when they made the decision to remove Payne from

service.  *See* Defendant's Motion, p.2.  This case is about the Army's motivation for making the removal decision on November 30, 2006, not its subsequent justification for the decision based on facts that were discovered *after* Payne was removed.

Payne does admit to using marijuana once in the early nineties.  Payne is certainly not unique in this regard, as studies indicate that 34.8% of men over the age of 35 have used marijuana at least once; however, few of them continue to use marijuana after they reach the age of 35.[3]  Payne was 26 years old on June 29, 1993, but was 39 on May 31, 2006, when he took the test at issue in this case.  See Ex. B (Dec. for Fed. Emp.).

All of Payne's previous urinalysis exams at the Red River Army Depot on September 17, 2002, July 10, 2003, December 1, 2004, and December 15, 2004 were negative for the presence of illegal drugs.  Ex. A, No. 11 (Def. Resp. to Ints.).  Despite the Army's insinuations to the contrary, Payne's experimentation with marijuana ended on June 29, 1993, when he failed a random urinalysis exam that resulted in him losing his job with the Navy.  HT 200:8-17.

<u>**ARGUMENT AND AUTHORITIES**</u>

**I.  Evidence That Payne Was Regarded As Disabled**

The Army claims that Payne did not exhaust his remedies for his claims that the Army discriminated and retaliated against him by moving him from his assigned position as driver of the ladder truck and that it retaliated against him by reporting information about his prior drug history to the EMT Board.  Defendant's Motion, p.15.

---

[3] 1997 National Household Survey on Drug Abuse, *available at* http://www.oas.samhsa.gov/NHSDA/1997Main/nhsda1997mfWeb-27.htm#Table3.1.

Payne raised claims of handicap discrimination and retaliation for his protected EEO activity before the MSPB.  R.232-233.  He also specifically cited to the Army's attempts to suspect his security clearance and have his EMT certification revoked.  R. 231.  This evidence and Payne's reference to the change in his duties are not new claims, but they are additional evidence that the Army had improper motivations when it removed him from service.

## II.  The Army is not entitled to summary judgment on Payne's claims for disability discrimination.

### A.  Payne established a prima facie case of disability discrimination.

The Army argues that Payne is not able to make out a prima facie claim of discrimination because he is not disabled or regarded as disabled within the meaning of the Rehabilitation Act. Defendant's Motion, p.16.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2).  "Major life activities" include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, eating, and sleeping.   29 C.F.R. §1630.2(i); *Waldrip v. General Elec. Co.*, 325 F.3d 652, 657 (5th Cir. 2003) (eating); *Kurth v. Gonzales*, 472 F. Supp. 2d 874, 880 (E.D. Tex. 2007) (sleeping).

#### a.  Payne was disabled.

Payne began to experience severe sleep deprivation, nausea, and anxiety in December, 2004.  Ex. CC (Payne Depo, p.82).  He experienced these conditions on a continual basis for several years, and would also occasionally have a panic attack, which would last two minutes to several hours.  *See Id.* at 85-86.  According to his wife, Payne had difficulty eating, sleeping, and

breathing as a result of his disability.  Ex. DD (Jackie Payne Depo, pp. 150-151).  He was prescribed Marinol, Xanax, and an anti-depressant on December 14, 2004.  *Id* at 72-73.

Payne had a severe panic attack at the Depot on March 3, 2006.  Ex. I (Parker Statement). Brad Thornton, Assistant Chief of Red River Fire and EMS, described the incident as follows:

> "[Payne] came back in my office obviously stressed and collapsed into the floor.  His breathing was rapid, body twitching and pulse racing.  I bent over him hugged him to me and tried my best to calm and comfort him.  After a few minutes of talking to him and getting his breathing under control I got him up into a chair.  I was constantly talking to him trying to get him to relax and control his breathing… His body was tense, and in spasm.  Breathing was slowing down and he eventually go (sic) to a point to where he was able to communicate with us." Ex. J (Thornton Statement).

On March 8, 2006, Payne's physician diagnosed his condition as "a generalized anxiety disorder now manifesting itself in panic attacks and sleep deprivation."  Ex. M (Chandler Note). Payne took a brief leave of absence and was prescribed Marinol again by Dr. Chandler on March 21, 2006.  *See Id*.; Exhibit N (Payne Chart).

The summary judgment evidence establishes that Payne was substantially limited in the major life activities of sleeping, eating, and breathing.  Payne lost more than 30 pounds and once went without sleep for three to four days.  Ex. DD (Jackie Payne Depo, pp. 118-19; 150-151). He also had frequent panic attacks that made it difficult for him to breath.  *Id*. at 151.  The foregoing evidence establishes that Payne was disabled within the meaning of the Act.

### b.  Payne was regarded as disabled.

An individual may also be considered "disabled" within the meaning of the Rehabilitation Act when his employer falsely perceives him to have a physical or mental impairment that substantially limits one or more major life activities.  *Booker v. Holder*, 2009 U.S. Dist. LEXIS

107994 (S.D. Tex. Nov. 17, 2009) (citing 42 U.S.C. § 12102(2); *E.E.O.C. v. Chevron Phillips Chemical Co.*, LP, 570 F.3d 606, 614 (5th Cir. 2009)).

Payne had two major panic attacks at the Depot.  The first occurred in March, 2005 and required Payne to be treated in an ambulance by other EMTs at the Depot.  Ex. CC (Payne Depo, p.86).   The second occurred in March, 2006 and was witnessed by a number of Payne's coworkers.  *See* Ex. M (Chandler Note).  According to the statement of Tommy Parker, Payne was "jerking, shaking, slurring his words, crying and having difficulty breathing."  Ex. I (Parker Statement).

Bruce Dinsmore testified that he was the assistant crew chief in charge of Payne's crew from 2004-2006.  Ex. X (Dinsmore Depo, p.9).  Dinsmore was among the first responders to the scene of Payne's panic attack.  *Id*. at 15-16.  He testified that he was concerned about Payne being able to perform his duties after the attack because "that was one of the things that you didn't know how he was going to react to something, what was going to cause him to, you know, get upset, you know, at that time after this."  *Id*. at 20.

Andrew Pagley was the Chief of the Fire and Emergency Services Division in 2005-2006.  Ex. BB (Pagley Depo, 8-9).  Pagley was Dinsmore's supervisor and the official that wrote the initial letter proposing Payne's removal from federal service.  Ex. P (Pagley Removal Letter).  Pagley also responded to the scene of Payne's March 2006 panic attack.  Ex. BB (Pagley Depo, p.23).  He described Payne's condition as "shaky" and "nervous" and stated that he "would not let him drive his car home in the condition he was in because he could have an accident on the way home."  *Id*. at 24.

Payne was treated by Dr. Chandler after his second panic attack.  Dr. Chandler provided a doctor's note that diagnosed Payne as having "a generalized anxiety disorder now manifesting itself in panics attacks and sleep deprivation" and recommended that Payne take a leave of absence.   Ex. M (Chandler Note).   This note was forwarded to Dinsmore and Pagley to substantiate the need for Payne to go on leave.  *Id*.

The summary judgment evidence establishes that the Army regarded Payne as substantially limited in the major life activities of thinking and concentrating.   The EEOC compliance manual provides that "[m]ental and emotional processes such as thinking, concentrating, and interacting with others are other examples of major life activities." EEOC Compliance Manual, § 902.3(b) (2008), *available at* http://www.eeoc.gov/policy/docs/902cm.html. Most circuits that have addressed the question have concluded that thinking is a major life activity.  *EEOC v. Chevron Phillips Chem. Co., LP*, 2009 U.S. App. LEXIS 12148 (5th Cir. Tex. 2009) ("We conclude that sleeping and thinking are major life activities."); *Battle v. United Parcel Serv., Inc*. 438 F.3d 856, 861 (8th Cir. 2006) ("[T]hinking and concentrating qualify as 'major life activities' under the ADA."); *Head v. Glacier N'west*, 413 F.3d 1053, 1061 (9th Cir. 2005); *Taylor v. Phoenixville Sch. Dist*., 184 F.3d 296, 307 (3d Cir. 1999).

Pagley and Dinsmore had several discussion about Payne's second anxiety attack. Ex. X (Dinsmore Depo, pp. 52-53); Ex. K (Dinsmore Email); Ex. L (Dispatch Email).   Dinsmore suggested assigning Payne to the dispatch position in Fire Station No. 1, which would have significantly limited his duties compared to those of a regular firefighter.   Ex. X (Dinsmore Depo, pp. 52-53); Ex. L (Dispatch Email).   Pagley and Dinsmore ultimately assigned Payne to

Fire Station No. 2, the backup station to Fire Station No. 1, and prohibited him from driving the fire truck.   Ex. X (Dinsmore Depo, pp. 30-33; 52-53); Ex. BB (Pagley Depo, pp. 37-38). Dinsmore testified that he was concerned about Payne having a panic attack while driving the fire truck.   Ex. X (Dinsmore Depo, p.34).

Resolving all inferences in favor of Payne as the non-movant, a fact question exists as to whether Pagley and Dinsmore believed Payne was substantially limited in his ability to think and concentrate.   A reasonable factfinder could conclude that the Army limited Payne's duties because it perceived him to be disabled and then took advantage of a false positive on a drug test as a pretext to remove him from service.

### B.  Payne's disability was a motivating factor in his removal.

The Army asserts that Payne cannot establish a prima facie case because he has no evidence that he was terminated "solely by reason of" his disability.   Defendant's Motion, p. 21. The Fifth Circuit has joined the majority of other circuits in holding that "discrimination need not be the sole reason for the adverse employment decision, but must actually play a role in the employer's decision making process and have a determinative influence on the outcome." *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. Tex. 2008).   The correct inquiry is whether Payne's disability was a "motivating factor" in the removal decision.   *Kelso v. Paulson*, 2009 U.S. Dist. LEXIS 30677 (N.D. Tex. Apr. 9, 2009).

The Army asserts that Payne was removed because he tested positive for an illegal drug in violation of Executive Order 12,564.   Defendant's Motion, p.21; Ex. P (Pagley Removal Letter); Ex. W (Ford Removal Letter).   According to Executive Order 12,564, however, the term "illegal

drugs" does not include the use of a controlled substance pursuant to a valid prescription or other uses authorized by law.[4]

Payne provided ample evidence that his test result was caused by a prescription medication to treat his disability. Payne provided the Medical Review Officer ("MRO") a copy of the label from his medication as requested. Ex. V (MRO Detail Report); Ex. C. (Label). When the MRO expressed skepticism over the date of the prescription and requested a note from his doctor, Payne provided a note from Dr. Chandler that confirmed his recent treatment with Marinol. Ex. V (MRO Detail Report); Ex. R (Chandler Note of 6/20/06). The MRO then contacted Payne for additional documentation and was told to forward all requests to his lawyer in writing. Ex. M. As the request of Ford, the MRO subsequently called Dr. Chandler and confirmed that Payne had been prescribed Marinol. *See* Ex. T (Ford Email); Ex. U (Ford Notes). The Army did not request any additional documents and subsequently removed Payne for his alleged "use of illegal drugs." Ex. W (Ford Removal Letter).

Payne has produced overwhelming evidence that the positive drug test was caused by his prescription medication, including the testimony of Dr. Chandler at the MSPB hearing and a copy of his medical chart from March 21, 2006, which indicates he was taking Marinol during the time he was tested. HT 141; Ex. N (Payne Chart). The Depot's Acute Care Clinic records also indicate that Payne was taking Marinol on March 24, 2006, when he visited the clinic regarding his "recurrent anxiety attacks." Ex. O (Chron. Rec. of Med. Care). In addition, Assistant Chief Dinsmore and Chief Pagley both testified that they saw pills in the bottle of

---

[4] Payne's use of Marinol from his 2004 prescription was authorized by law. *See* 21 USCS § 844(a), making it illegal to possess a controlled substance *unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner.*

Marinol that Payne brought to them on June 29, 2006. Ex. X (Dinsmore Depo, p. 40); Ex. BB (Pagley Depo, p. 32); Ex. P (Pagley Removal Letter). The deciding official, Larry Ford, testified that he was familiar with the drug Marinol and knew it would cause an individual to test positive for THC. Ex. Y (Ford Depo, pp.24-25).

When the employer claims it terminated an employee for violating a work rule, the employee may establish a prima facie case by showing he did not violate the rule. *Mayberry v. Vought Aircraft Co*., 55 F.3d 1086 (5th Cir. Tex. 1995). Payne has demonstrated that he did not violate the rule prescribing the use of illegal drugs. Accordingly, he has presented sufficient evidence to state a prima facie case under the Rehabilitation Act.

### III. The Army is not entitled to summary judgment on Payne's claims for retaliation.

#### A. Payne stated a claim for retaliation based on his EEO complaint.

As the Army has correctly pointed out, Payne accidentally cited to Title VII instead of the ADEA in his First Amended Complaint. Am. Compl. at ¶40. Regardless, the Army had sufficient notice that his claim was based on retaliation for filing a charge under the ADEA and, therefore, the allegations in his First Amended Complaint are sufficient to satisfy the "liberal pleading standards" established by Rule 8 of the Federal Rules of Civil Procedure. *See Garrett v. Judson Indep. Sch. Dist*., 299 Fed. Appx. 337, 346 (5th Cir. Tex. 2008).

Pleadings must be construed "to do justice," and Federal Courts do not require technical forms of pleading or motions. *Id*.; FED. R. CIV. P. 8(d)(1), (f). Under Rule 8, it is enough that the plaintiff pleads sufficient facts to put the defense on notice of the theories on which the complaint is based. *Garrett* (citing *TIG Ins. Co. v. Aon Re, Inc*., 521 F.3d 351, 357 (5th Cir.

2008)).  Despite citing to Title VII, Payne alleged sufficient facts to notify the Army of his claim

for retaliation under the ADEA. *Hightower v. BE&K Constr. Co*., 2006 U.S. Dist. LEXIS 67041

(S.D. Miss. Sept. 18, 2006) (Plaintiff cited incorrect statute in claim based on age

discrimination).

### B.  Payne established a prima facie case of retaliation.

#### a.   Payne engaged in a protected activity.

The Army suggests that Payne did not engage in a protected activity because he did not

have an objectively reasonable belief that he was protected by the ADEA.  Defendant's Motion,

pp. 25-27.

The ADEA is a remedial legislation, and therefore should be construed liberally.  *Coke v.*

*General Adjustment Bureau, Inc*., 640 F.2d 584, 594-595 (5th Cir. Tex. 1981).  "The statutory

scheme of ADEA contemplates initiation of compliance procedures by laymen, unassisted by

lawyers, and accordingly procedural technicalities are inappropriate." *Id*.

It is evident that Payne had a reasonable, good-faith belief that he was the victim of age

discrimination, the standard that appears to be currently required by the Fifth Circuit.  *Green v.*

*Adm'Rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. La. 2002);  *Payne v. McLemore's*

*Wholesale & Retail Stores*, 654 F.2d 1130, 1137 (5th Cir. 1981).

Payne submitted his complaint because he was treated differently by Depot personnel in

the hours immediately following his altercation with Larry Fountain.  Ex. E (Formal Compl. of

Discrim.); Ex. CC (Payne Depo pp. 65-68).  Payne told the EEO office that he was treated

differently because he was younger than Fountain and the EEO office advised him to file for age

discrimination.  Payne Depo p. 67.  The formal complaint form given to him by the EEO office contains a checkbox for age discrimination, but it does not state that the complaining party must be over 40 years of age.  Ex. E (Formal Compl. of Discrim.).

It was entirely reasonable for Payne, a non-lawyer, to believe he was protected from age discrimination by the ADEA.  There is nothing to suggest that Payne's age claim was filed in bad faith or that it would result in an abuse of the anti-discrimination statutes as suggested by the Army.  Payne's claim for retaliation should prevail if he can prove the Army took an adverse employment action against him because he sought relief under the ADEA.  Such a ruling would allow employees enough leeway to file complaints against their employers without requiring them to know the technical details of the law.  The rule urged by the Army would expose employees to a greater risk of retaliation, as many are not aware of the legal requirements of the statutes and often file complaints without the assistance of an attorney.  Payne's claim should not be dismissed unless the Army can prove it was made in bad faith or that he had actual knowledge that he was not covered by the Act.

### b.  Evidence of retaliation.

Payne contacted the EEO office on January 26, 2005 about his concerns of discrimination.  Ex. D (Notice of Right to File).  He attended a voluntary mediation with an official from the Army before he filed a formal complaint.  *Id.*; Ex. CC (Payne Depo, pp. 68-70).  The mediation terminated when the Army's representative became angry and started screaming at Payne and his union representative, Michael Miller, requiring the mediator to separate the parties.  Ex. CC  (Payne Depo, p. 69).

Payne filed a formal complaint of age discrimination against the Army on February 7, 2005.  Ex. E (Formal Compl. of Discrim.).  Payne listed Dinsmore as a witness to the discrimination.  *Id*.  On February 25, 2005, the Army received a Report of Investigation from the U.S. Office of Personnel that included several items Payne had allegedly failed to include on his job application.  Ex. F (CPAC Letter).  The Army attempted to meet with Payne on two occasions to discuss the alleged discrepancies, but the meetings were postponed.  *Id*.   The Army then forwarded this information to the State Compliance Office and requested them to review it in the hope that it would cause him to lose his certification as an EMT.  *Id*.

Payne informed the Army that several of the items on the background check were inaccurate, including an accusation that he had been terminated from Weyerhaeuser Paper Mill for failing a substance abuse test.  Ex. H (Weyerhaeuser Letter).  Payne provided the Army a letter dated September 9, 2005 from the Weyerhaeuser Employee Service Center that affirmed he had never worked at Weyerhaeuser.  *Id*.  Nevertheless, the Army included this allegation as fact when it contacted the State Compliance Office in September, 2005 and April, 2006 to see if anything in Payne's background would result in revocation of his EMT license.  Ex. F (CPAC Letter); Ex. G (CPAC Fax).

Kris King, Emergency Medical Services ("EMS") Coordinator at the Depot, testified that they only employ firefighters who are also certified as EMTs.  Ex. Z (King Depo, pp. 19-20).  He could not recall a firefighter ever losing his certification, but indicated that such a firefighter would probably be removed from service if he did not have the proper credentials.  *Id*.

Ultimately, the State Compliance Office reviewed Payne's file and decided that he could retain his certification as an EMT.  However, a new opportunity for retaliation presented itself a

month later, when the Army was notified that Payne had failed a random drug test.  As stated previously, Payne provided the Army with extensive evidence that the test results were caused by his prescription medication.  Despite the clear and convincing evidence presented by Payne, the Army removed him for service for using illegal drugs.

King and Miller, two of Payne's fellow firefighters, were aware of Payne's age discrimination complaint.  Ex. Z (King Depo, pp. 9-10); Ex. AA (Miller Depo, pp 12-13).  King testified that he also heard other people talking about Payne's complaint around the firehouse, but did not recall who these people were or the context in which Payne's complaint was discussed.  Ex. Z (King Depo, pp. 9-10).  King also testified that Dinsmore and Pagley routinely work at Fire Station No. 1 with the rest of the firefighters.  *Id.* at 37-38.

A reasonable trier of fact could conclude that the Army attempted to retaliate against Payne by having his EMT license revoked, then successfully retaliated by removing him when he failed a drug test due to his prescription medication.  Johnnie High of the CPAC ordered staff members to fax false information about Payne to the State Compliance Office for EMTs on April 4, 2006.  Ex. G (CPAC Fax).  Payne's certification was not revoked, but he was selected for a random urinalysis test on May 31, 2006. HT 19:15-20:8.  A few days later, Chief Pagley was notified by telephone that Payne had failed the test.  Ex. BB (Pagley Depo, pp, 28-29).  He immediately discussed the results with Larry Ford and Johnnie High, who had previously attempted to have Payne's EMT certification revoked in April.  Ex. G (CPAC Fax) .  King testified that he believed the Army was trying to retaliate against Payne when the CPAC forwarded the information to the State Compliance Office.  Ex. Z (King Depo, pp. 25-27) .

The Army's true motivation for removing Payne will have to be determined by the finder of fact. Summary judgment is not appropriate because of the numerous fact questions surrounding Payne's claim for retaliation.

### IV. Evidence of pretext.

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. *Davis v. Chevron USA, Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994). If the defendant is successful in proffering a legitimate non-discriminatory reason for the employment action, the plaintiff can avoid summary judgment by establishing that the defendant's employment decision was really a pretext for discrimination. *Bocalbos v. Nat'l Western Life Ins. Co.*, 162 F.3d 379, 384 (5th Cir. 1998).

### The Army's Allegations Are False and Unworthy of Credence

A plaintiff can demonstrate that the termination decision proffered by the employer is a pretext by showing that it was based on allegations that are false, trivial, or otherwise unworthy of credence. *Laxton v. Gap Inc.*, 333 F.3d 572, 580 (5th Cir. Tex. 2003).[5]

In *Laxton v. Gap Inc.*, for example, the defendant alleged that it terminated a store manager for several incidents, such as closing the store early, allowing sales staff to wear backpacks during a promotion, exceeding her discretionary spending authority by purchasing pizza for employees, and hiring a former bank robber. 333 F.3d at 583. The employee was able to show pretext, and

---

[5] In cases involving the falsity of allegations, the inquiry is limited to whether the employer believed the allegations in good faith and whether the decision to discharge the employee was based on that belief. Waggoner v. City of Garland, 987 F.2d 1160, 1165-66 (5th Cir. 1993); Johnson v. Louisiana, 369 F.3d 826, 832 n.7 (5th Cir. 2004); Ramirez v. Landry's Seafood Inn & Oyster Bar, 280 F.3d 576, 579 n.4 (5th Cir. 2002); Singh v. Shoney's, Inc., 64 F.3d 217, 219 (5th Cir. 1995).

ultimately defeat the defendant's motion for summary judgment, by offering evidence that the defendant's allegations were false or otherwise unlikely of credence. *Id.*

The evidence cited by Payne is sufficient to withstand summary judgment. The Army asserts it removed Payne from service because he was using illegal drugs as evidenced by his positive drug test for THC. Ex. W (Ford Removal Letter). Payne was given the opportunity to respond to the positive drug test before he was terminated. *Id.* He hired an attorney from Virginia and produced the following evidence of his innocence:

(1)     Payne gave the Marinol to Dinsmore and Pagley during a meeting at which Pagley notified him of the positive test results. Both Pagley and Dinsmore recall seeing pills in the bottle. Ex. X (Dinsmore Depo, p.40); Ex. BB (Pagley Depo, pp.31-32).

(2)     Payne notified the Army's Acute Care Clinic that he was taking Marinol on March 24, 2006. Ex. O (Chron. Rec. of Med. Care).

(3)     Payne sent the MRO a copy of the label from the prescription medication. Ex. V (MRO Detail Report); Ex. C. (Label).

(4)     Payne sent the MRO a doctor's note confirming that he was being treated by Marinol. Ex. V (MRO Detail Report); Ex. R (Chandler Note of 6/20/06).

(5)     The deciding official, Larry Ford, asked the MRO to contact Dr. Chandler to verify that he was taking prescribed Marinol during the time period of the drug test. Ex. T (Ford Email). The MRO contacted Dr. Chandler, who "indicated that he had given Eric (Payne) the prescription because Eric was depressed." Ex. U (Ford Notes).

The Army blames Payne for failing "to substantiate his claimed use of Marinol at the time of the drug test." Defendant's Motion, p.23 (citing HT 69:23-70:7). This explanation is not supported by the evidence. Payne asked the MRO to forward all questions to his lawyer in writing on September 22, 2006; however, the MRO personally spoke to Dr. Chandler as requested by Ford (the deciding official) on September 26, 2006. Ex. T (Ford Email); Ex. U (Ford Notes). Dr. Chandler confirmed that he was treating Payne with Marinol. Ex. U (Ford Notes). It is also noteworthy that neither Ford nor Cametas made any written requests to Payne's attorney after September 22, 2006. *See* Ex. V (MRO Detail Report).

Resolving all inferences in the light most favorable to Payne, genuine issues of material fact exist regarding the Army's true motives for the employment decision. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

## CONCLUSION

Payne has met his burden by submitting evidence that shows a genuine issue of material fact on every element of his claim.   Accordingly, Defendant's Motion for Summary Judgment should be denied.

Respectfully Submitted,

By: _____
STEVEN E. CLARK
STATE BAR NO. 04294800
ZAC DUFFY
STATE BAR NO. 24059697

CLARK & MILBY, PLLC
Elm Place
1401 Elm Street, Suite 3404
Dallas, Texas 75202
www.camfirm.com
Tel.:  (214) 220-1210
Fax:  (214) 220-1218

ATTORNEYS FOR PLAINTIFF
ERIC PAYNE


<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on December 4, 2009, I electronically filed the foregoing document with the Clerk of Court for the United States District Court, Eastern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to Defendants' Counsel, who has consented to accept this Notice as service of this document by electronic means.



_____
Zac Duffy

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
DALLAS REGIONAL OFFICE


ERIC J. PAYNE,                                    DOCKET NO.:
                                                 DA-0752-07-0148-I-1
        Appellant

V.

DEPARTMENT OF THE ARMY,                          DATE:  February 13, 2007

        Agency


**RESPONSE TO APPELLANT'S INTERROGATORIES**

1. Please identify each and every person at the Department of the Army, US Army Tank-Automotive

and Armaments Command, Red River Army depot, who has been subject to actual or potential

discipline by the agency from 2001 to the present for a first or subsequent offense of "Use of Illegal

Drugs," "Violating the Army Drug Free Work Place Program," "Testing Positive for Marijuana" or

similar charge arising due to a positive urinalysis test for controlled substances.


        Answer.  Objection on the grounds of relevance and privacy.  In accordance with MSPB

decisions, only the previous decisions of this deciding official are relevant.  The deciding official Mr.

Ford has been the Director of DPW for approximately 1 year.  He has issued a decision for removal

of the 3 or 4 other employees who used illegal drugs while he was director.  In addition the requested

information can not be disclosed under federal law due to the Privacy Act.


    2.  As to each person identified above, please state:



**EXHIBIT**

**A**

(a) The offense for which the employee was disciplined and the number of the offense;

(b) The description of the basis for the charge contained in the proposal letter, including the concentration of the drug in ng/ml;

(c) The penalty proposed for the offense;

(d) The penalty imposed for the offense, including any Last Chance Agreement;

(e) A listing of any other disciplinary action taken against the employees identified;

(f) The position classification and pay scale of the person so identified and whether the employee was probationary or non-probationary;

(g) Whether the person had engaged in protected EEO activity; and

(h) Whether the person had a handicapping medical condition.

Answer: 2 – See above Interrogatory Number 1 answer. In addition any LCA settlements are confidential and under the rules of evidence and terms of the LCA can not be used as evidence in this case.

3. If any person identified in the above interrogatory was not disciplined to the same extent as Appellant, please explain in detail the reason that person was not disciplined to the same extent as Appellant, if different or mitigating circumstances are the reason.

Answer. See answer to Interrogatory 1 and 2.

4. Please identify any and all disciplinary actions, whether proposed, effected, or cancelled, which the agency took against any other employees for "Use of Illegal Drugs" or similar charges for the period 2001 through the present.

Answer. Objection on the basis of relevance and same objections as Interrogatory 1 and 2.

5. Please identify with specificity each and every Red River Army Depot employees who has failed a urinalysis test from 2001 through the present.

Objection on the basis of relevance and under the Privacy Act the requested information can not be disclosed.

6. Please identify any and all laws, rules, regulations or other official guidance relied upon by the agency for purposes of the removal action, as related to the agency charge.

Objection to the extent that the answer calls for attorney work product. The following are relied on to conduct the drug testing program EO 12564, AR 600-85, DA PAM 600-85, The MRO Handbook (Cover Page and Title Page provided in response to Request for Production 6), and DHHS Drug Testing Guidance Available on line at http://dwp.samhsa.gov/index.aspxand and MRO Guidance http://dwp.samhsa.gov/DrugTesting/Level_1_Pages/HHS%20MRO%20Manual%20(Effective%20N ovember%201,%202004).aspx

7. Please identify any and all persons known to the agency who may have knowledge pertaining to the issues of this appeal, stating:  a) name, b) position title, c) relationship to the Appellant, d) knowledge or information possessed by such person; and e) the means by which such person acquired this knowledge or information.

See Agency Narrative Response beyond that, objection on the basis that the Agency Representative does not know and is not required to investigate every person who may have knowledge.

PAYNE_00001060

8. Please identify all witnesses the agency intends to call to testify in this matter and identify the content of their anticipated testimonies.

The Agency has not made this decision at this time the names will be provided as required by the Judge's Order.

9. Please identify any and all documents relied upon by the agency to support this removal action.

See Agency Narrative Response and the contents of this discovery response.

10. Please identify all persons responsible for obtaining, securing and testing Appellant's urine sample.

Answer: See the documents in the Agency Narrative Response. The additional information is provided: Police Officer Gerald Tave observed Debbie Brown Alternate Installation Biochemical Test Coordinator was the collection agent for his second sample. Ronda Bowers (IBTC), Kim Stewart (alternate) and Mary Jayne P. Locke (alternate) also act as collection agents.

11. Please identify by date all prior drug tests administered to Appellant, and the results of each such test.

Answer:  17 Sep 02  -  Negative

10 Jul 03  -  Negative

01 Dec 04  -  Negative

15 Dec 04  -  Negative

31 May 06  -  First Specimen taken (9:50 a.m.) did not register on temp strip, a second test, directly observed, had to be done according to regulation. This first test was on COC 0148519 and was first reported by MRO on 6-5-06 as Negative Dilute, then MRO issued Cancelled on 6-14-06 31 May 06. There was the second specimen taken (10:35 a.m.) and was directly observed by Officer Tave on COC 0148520 and reported by MRO as positive on 20 Jun 06.

12. Please identify all persons who were notified of Appellant's positive urinalysis results by name, position title, date, and method of notification.

MRO's office called to notify RRAD that a result was being posted.  Ronda Bowers, Installation Biochemical Test Coordinator went into Pembrooke's web-site and printed off result on 20 or 21 June Jun 06.

See Agency Narrative response.  Ronda Bowers called Andrew Pagley, Chief of Fire and Emergency Services, and asked that he come to Bldg 469 to pick up results of a drug test.  He came and was given two copies, one for his Directorate and one to furnish his CPAC representative.  He signed for these copies.  Chief Pagley was the only one that Ronda Bowers notified.

PAYNE_00001062

13. Please identify and produce copies of all documentation pertaining to Appellant's May 31, 2006, urine test. This includes, but is not limited to, any and all intake sheets, questionnaires or lists regarding the use of prescription or over-the-counter drugs, chain of custody documents, summary laboratory report, positive/negative assay test results, gas chromatograph / mass spectrometer testing results, and indications of THC levels. Also include documentation pertaining to Blind Performance Test Specimens providing an audit of the accuracy of the screening process.

Answer: See Agency Narrative Response and RFP #13. No intake sheets nor questionnaires are used when administering the program.

14. Please identify and produce a complete copy of the agency's Drug Free Work Place Plan promulgated in accordance with Executive Order 12564, Section 2 and 3.

Answer: We don't have a drug free workplace plan as such. We utilize the guidance identified in Interrogatory 6 for implementation of the program.

15. Please state with specificity the content of any conversation or other communication which Dr. John G. Cametas had with Appellant following the report of a positive test result.

See Agency Narrative Response and RFP# 17. Please note that Dr. Cametas is not certain if was called or if he made the call referenced in RFP# 17.

PAYNE_00001063

September 1994
U.S. Office of Personnel
Management

Form Approved:
O.M.B. No. 3206-0182
NSN 7540-01-368-7775
50306-101

# Declaration for Federal Employment

## GENERAL INFORMATION

**1 FULL NAME**

► ERIC Payne

**2 SOCIAL SECURITY NUMBER**

► ▓▓▓▓▓▓▓▓

**3 PLACE OF BIRTH** *(Include City and State or Country)*

► Fairbanks AL

**4 DATE OF BIRTH** *(MM/DD/YY)*

► ▓▓▓▓▓ 66

**5 OTHER NAMES EVER USED** *(For example, maiden name, nickname, etc.)*

►

► ERIC Gray

**6 PHONE NUMBERS** *(Include Area Codes)*

DAY ► 580 420-6369

NIGHT ► 580 420-6369

## MILITARY SERVICE

**7** Have you served in the United States Military Service? *If your only active duty was training in the Reserves or National Guard, answer "NO".* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | Yes | No |
|---|---|---|
| | ✓ | |

If you answered "YES", list the branch, dates (MM/DD/YY), and type of discharge for all active duty military service.

| BRANCH | FROM | TO | TYPE OF DISCHARGE |
|---|---|---|---|
| NAVY | 10-84 | 10-87 | HON. RE 1 |

## BACKGROUND INFORMATION

**For all questions,** provide all additional requested information under item 15 or on attached sheets. The circumstances of each event you list will be considered. However, in most cases you can still be considered for Federal jobs.

**For questions 8, 9, and 10,** your answers should include convictions resulting from a plea of nolo contendere *(no contest),* but omit (1) traffic fines of $300 or less, (2) any violation of law committed before your 16th birthday, (3) any violation of law committed before your 18th birthday if finally decided in juvenile court or under a Youth Offender law, (4) any conviction set aside under the Federal Youth Corrections Act or similar State law, and (5) any conviction whose record was expunged under Federal or State law.

|  | Yes | No |
|---|---|---|
| **8** During the last 10 years, have you been convicted, been imprisoned, been on probation, or been on parole? (Includes felonies, firearms or explosives violations, misdemeanors, and all other offenses.) *If "Yes", use item 15 to provide the date, explanation of the violation, place of occurrence, and the name and address of the police department or court involved.* · · · · · · · · · · · · · · · · · · · · · · · · · · · | | ✓ |
| **9** Have you been convicted by a military court-martial in the past 10 years? (If no military service, answer "NO".) *If "Yes", use item 15 to provide the date, explanation of the violation, place of occurrence, and the name and address of the military authority or court involved.* · · · · · · · · · · · · · · · · · · · · · · · | ✓ | |
| **10** Are you now under charges for any violation of law? *If "Yes", use item 15 to provide the date, explanation of the violation, place of occurrence, and the name and address of the police department or court involved.* · | ✓ | |
| **11** During the last 5 years, were you fired from any job for any reason, did you quit after being told that you would be fired, did you leave any job by mutual agreement because of specific problems, or were you debarred from Federal employment by the Office of Personnel Management? *If "Yes", use item 15 to provide the date, an explanation of the problem and reason for leaving, and the employer's name and address.* · · · · · · · · · · | | ✓ |
| **12** Are you delinquent on any Federal debt? (Includes delinquencies arising from Federal taxes, loans, overpayment of benefits, and other debts to the U.S. Government, plus defaults of Federally guaranteed or insured loans such as student and home mortgage loans.) *If "Yes", use item 15 to provide the type, length, and amount of the delinquency or default, and steps that you are taking to correct the error or repay the debt.* · | | ✓ |

## ADDITIONAL QUESTIONS

|  | Yes | No |
|---|---|---|
| **13** Do any of your relatives work for the agency or organization to which you are submitting this form? (Includes father, mother, husband, wife, son, daughter, brother, sister, uncle, aunt, first cousin, nephew, niece, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, stepfather, stepmother, stepson, stepdaughter, stepbrother, stepsister, half brother, and half sister.) *If "Yes", use item 15 to provide the name, relationship, and the Department, Agency, or Branch of the Armed Forces for which your relative works.* · | | ✓ |
| **14** Do you receive, or have you ever applied for, retirement pay, pension, or other pay based on military, Federal civilian, or District of Columbia Government service? · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · | | ✓ |

**EXHIBIT B**

**CONTINUATION SPACE / AGENCY OPTIONAL QUESTIONS**

**15** Provide details requested in items 8 through 13 and 17c in the continuation space below or on attached sheets. Be sure to identify attached sheets with your name, Social Security Number, and item number, and to include ZIP Codes in all addresses. If any questions are printed below, please answer as instructed (these questions are specific to your position, and your agency is authorized to ask them).

Was using brothers truck - who has a permit to carry handgun, his gun had been left in the vehicle, I was stopped for a minor traffic violation; therefore. Charged for having gun. Concealed Weapon - fined - $1,000.00. 2 tickets issued - My brother had to pick his gun up.

Ashdown ARK Feb 2 2000

**CERTIFICATIONS / ADDITIONAL QUESTION**

**APPLICANT: If you are applying for a position and have not yet been selected.** Carefully review your answers on this form and any attached sheets. When this form and all attached materials are accurate, complete item 16/16a.

**APPOINTEE: If you are being appointed.** Carefully review your answers on this form and any attached sheets, including any other application materials that your agency has attached to this form. If any information requires correction to be accurate as of the date you are signing, make changes on this form or the attachments and/or provide updated information on additional sheets, initialing and dating all changes and additions. When this form and all attached materials are accurate, complete item 16/16b and answer item 17.

**16** I certify that, to the best of my knowledge and belief, all of the information on and attached to this Declaration for Federal Employment, including any attached application materials, is true, correct, complete, and made in good faith. I understand that a false or fraudulent answer to any question on any part of this declaration or its attachments may be grounds for not hiring me, or for firing me after I begin work, and may be punishable by fine or imprisonment. I understand that any information I give may be investigated for purposes of determining eligibility for Federal employment as allowed by law or Presidential order. I consent to the release of information about my ability and fitness for Federal employment by employers, schools, law enforcement agencies, and other individuals and organizations to investigators, personnel specialists, and other authorized employees of the Federal Government. I understand that for financial or lending institutions, medical institutions, hospitals, health care professionals, and some other sources of information, a separate specific release may be needed, and I may be contacted for such a release at a later date.

**16a** Applicant's Signature ▶ X _(signature)_   Date ▶ 7/16/01
(Sign in ink)

**16b** Appointee's Signature ▶ _(signature)_   Date ▶ 7/16/01
(Sign in ink)

APPOINTING OFFICER: Enter Date of Appointment or Conversion ▶ 7/16/01

**17** **Appointee Only (Respond only if you have been employed by the Federal Government before):** Your elections of life insurance during previous Federal employment may affect your eligibility for life insurance during your new appointment. These questions are asked to help your personnel office make a correct determination.

| | Date (MM/DD/YY) | | |
|---|---|---|---|
| **17a** When did you leave your last Federal job? . . . . . . . . . . . . . . . | 93 | | |

| | Yes | No | Don't Know |
|---|---|---|---|
| **17b** When you worked for the Federal Government the last time, did you waive Basic Life Insurance or any type of optional life insurance? . . . . . . . . . | | ✓ | |

**17c** If you answered "Yes" to item 17b, did you later cancel the waiver(s)? If your answer to item 17c is "No," use item 15 to identify the type(s) of insurance for which waivers were not cancelled. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Optional Form 306 (Back)   September 1994

PAYNE_00000372

# SHERRILL'S ☏ 580-584-3353
**PHARMACY & GIFTS** 101 MAIN ST. BROKEN BOW, OK 74728

12/14/2004                                    :44pm

Sherrills Pharmac
MAIN STREET
N BO    OK 747
Phone: 580        335  Fax:(58        045

1 5 -0027429  P-      ERIC J        112.30

                                    112.30
                                      0.00
                                $   112.30

Due.                                112.30
                                      0.00

Items: 1
Check Amount      3  112.30
Check #:    2232
Clerk ID: ASHLIE
Register #: 1
Drawer #: 1

*** Thank You ***

050393

**MARINOL 5MG CAPSULE**

**IMPORTANT NOTE:** The following information is intended to supplement, not substitute for, the expertise and judgment of your physician, pharmacist or other healthcare professional. It should not be construed to indicate that use of the drug is safe, appropriate, or effective for you. Consult your healthcare professional before using this drug.

**USES:** This medication is used to treat nausea and vomiting due to cancer chemotherapy.

**HOW TO USE:** Take this medication by mouth as directed. Do not increase your dose or take this more often than prescribed. Do not drive, operate machinery or engage in activities requiring alertness while taking this medication.

**SIDE EFFECTS:** Dizziness, drowsiness, irritability, mood changes, difficulty concentrating, distorted vision, dry mouth and changes in appetite may occur especially the first several days as your body adjusts to the medication. If any of these effects continue or become bothersome, inform your doctor. Notify your doctor if you develop skin rash, rapid heart rate, sleep disturbances, depression, memory loss, mental confusion, hallucinations, behavior changes, numbness or tingling of the hands or feet. Be aware that this medication may cause mood or behavior changes. If you experience any such effects, remain calm. Do not take any more doses until you contact your doctor. If you notice other effects not listed above, contact your doctor or pharmacist.

**PRECAUTIONS:** Tell your doctor if you have: heart disease, high blood pressure, a history of depression or other emotional or mental conditions, allergies (especially to sesame oil). Long-term use of this medication may cause dependency. Withdrawal symptoms such as irritability, restlessness, sleeping problems, sweating, hot flashes, hiccups and loss of appetite have been reported when this medication is discontinued abruptly following long-term therapy. Do not drive, operate machinery or engage in activities requiring alertness while taking this medication. This medication should be used with caution in elderly persons as they may be more sensitive to the effects. This medication should be used only if clearly needed during pregnancy. Discuss the risks and benefits with your doctor. Because this medication appears in breast milk, consult your doctor before breast-feeding.

**DRUG INTERACTIONS:** Tell your doctor of any over-the-counter or prescription medication you may take, especially of: narcotic pain relievers, sleeping pills, sedatives, barbiturates, anti-anxiety medication. Avoid intake of alcoholic beverages while taking this medication since the risk of side effects will be increased. Do not start or stop any medicine without doctor or pharmacist approval.

**NOTES:** It is important that this medication be taken under supervision of a responsible adult since mood or behavior changes may occur. It may be necessary for the first dose or two to be taken in the doctor's office or while in the hospital so your response can be monitored closely.

**MISSED DOSE:** If you miss a dose, take it as soon as remembered; do not take it if it is near the time for the next dose, instead, skip the missed dose and resume your usual dosing schedule. Do not "double-up" the dose to catch up.

**STORAGE:** Store in a cool environment between 46 to 59 degrees F (8 to 15 degrees C). May be refrigerated. Do not freeze.

If you have any questions concerning this or any of your medications, a Pharmacist is available during normal business hours at (580) 584-3353 to answer your questions

## TO: (804)

## RE: ERIC F

# SHERRILL'S ☏580-584-3353
**PHARMACY & GIFTS** 101 MAIN ST. BROKEN BOW, OK 74728

Rx  27429        CHANDLER, PAUL
Eric J Payne                12/14/2004
TAKE 1 CAPSULE, BY MOUTH,
TWICE DAILY

50 Cap MARINOL 5MG CAPSULE
NDC:00051-0022-11 MfgUNIME RPfcMRS -CRC-

**EXHIBIT**

_C_

PAYNE_00000629

03 February 2005

DA Docket Number: ARRRAD05JAN06581

MEMORANDUM FOR: Eric J Payne

SUBJECT: Notice of Right to File a Formal Complaint of Discrimination after Mediation Attempt

1. This serves as notice that on 02 February 2005, mediation was conducted on the claim(s) raised in your pre-complaint, which could not be fully resolved. You initially contacted an EEO official on 26 January 2005 to initiate the pre-complaint process and, by agreeing to participate in mediation, the pre-complaint processing period was extended to 90 calendar days. As recorded on the pre-complaint intake, you alleged that you were discriminated against on 01 December 2004 because of your (basis not identified) when you were treated differently by Security after you and another employee had an altercation.

2. If you believe that you have been discriminated against on the basis of race, color, religion, sex, national origin, age, mental/physical disability and/or reprisal for participation in protected EEO activity or opposition to prohibited discrimination, you have the right to file a formal complaint of discrimination within **15 calendar days** of receipt of this notice.

3. This complaint must be in writing, preferably on a DA Form 2590-R, which is provided for your convenience. Your complaint must be filed in person by you or your attorney, if retained, or by mail to any of the officials listed below. If you file your complaint with one of the officials listed below, other than the EEO officer, it will be sent to the EEO officer for processing. Therefore, it is recommended that your complaint be filed with the EEO officer to ensure the most expeditious processing.

    a. Charlean J Carroll
       Attn: AMSTA-RR-E
       100 Main Drive
       Texarkana Texas  75507-5000

    b. Michael B Cervone
       Commander
       Red River Army Depot
       100 Main Drive
       Texarkana, Texas 75507-5000

    c. Department of Army, Director of Equal Employment Opportunity
       ATTN: SAMR-EOCCA
       1941 Jefferson Davis Highway, Suite 109B
       Arlington, VA  22202-4508



EXHIBIT

D

  d. Secretary of the Army
     ATTN: SAMR-EOCCA
     1941 Jefferson Davis Highway, Suite 109B
     Arlington, VA 22202-4508

4. The formal complaint must specify the claim(s) and the basis/bases of the complaint raised during the ADR session(s). It is important that you state the incident(s) that caused you to initiate your complaint as concisely as possible, citing the nature of the action, the date of the action, and the person(s) involved. You may only raise those claim(s) and incident(s) discussed, or like or related to those discussed, during ADR. The complaint should also state whether you have filed a grievance under a Negotiated Grievance Procedure or an appeal to the Merit System Protection Board, on the same subject matter, including dates. This information is necessary to determine whether your complaint is appropriate for processing under Title 29, Code of Federal Regulations, Part 1614.

5. If you retain an attorney or any other person as a representative, you must immediately notify the EEO officer, (name and address), in writing of the name, address, and telephone number of your attorney or representative. You are advised that:

  a. Unless you state otherwise in writing, after receipt of written notice of the name, address, and telephone number of your representative, service of all documents will be with the representative, with a copy furnished to you.

  b. If your representative is an attorney, service of all official correspondence will be made on the attorney with a copy furnished to you, however, time frames for the receipt of correspondence will be computed from the date of receipt by the attorney.

6. Should you decide to file a formal discrimination complaint, you and/or your representative will receive a written acknowledgement of receipt of the complaint from the EEO officer.

_Anthony J Black_
Anthony J Black
EEO Counselor

_Signature of Aggrieved_
Signature of Aggrieved

2-7-05
Date Received by Aggrieved:

# FORMAL COMPLAINT OF DISCRIMINATION

For use of this form, see AR 690-600; the proponent agency is OSA

## PRIVACY ACT STATEMENT (5 U.S.C. §552a)

**AUTHORITY:** Public Law 92-261

**PRINCIPAL PURPOSE:** Used for formal filing of complaints of discrimination because of race, color, national origin, religion, sex, age, physical or mental disability, and/or reprisal by Department of the Army civilian employees, former employees, applicants for employment, and some contract employees.

**ROUTINE USES:** Information will be used (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts; (b) to respond to general requests for information under the Freedom of Information Act; (c) to respond to requests from legitimate outside individuals or agencies (Congress, White House, Equal Employment Opportunity Commission) regarding the status of an EEO complaint or appeal; or (d) to adjudicate an EEO complaint or appeal.

**DISCLOSURE:** Voluntary, however, failure to complete all appropriate portions of the form may lead to rejection of complaint on the basis of inadequate data on which to continue processing.

| 1. NAME (Last, First, Middle Initial) Payne Eric J | 2. SOCIAL SECURITY NUMBER ▓▓▓▓ | 3. HOME TELEPHONE NUMBER (580) 420-6369 |
|---|---|---|

| 4. HOME ADDRESS Broken Bow, OK 74728 Rt 5 Box 706 | 5. DO YOU CURRENTLY WORK FOR THE FEDERAL GOVERNMENT? ☐ NO  ☑ YES (If yes, complete 6, 6a, 6b, 7 and 8.) |
|---|---|

| 6. NAME OF AGENCY WHERE CURRENTLY EMPLOYED Red River Fire Dept. | 6a. WORK TELEPHONE NUMBER (903) 334-4177 |
|---|---|

| 6b. EMPLOYER'S ADDRESS (Complete information to include office symbol.) 75507 40 main Dr. texarkan TX 75505wo | 7. PAY PLAN/SERIES/GRADE GS 7/2 |
|---|---|
| | 8. CURRENT JOB TITLE Fire Driver ol. |

## SECTION I - COMPLAINT INFORMATION

**9. REASON YOU BELIEVE YOU WERE DISCRIMINATED AGAINST** (Check below all that apply. Identify specific race, color, sex, age, religion, national origin, and/or disability.)

☐ RACE ___   ☐ COLOR ___   SEX ☐ Male ☐ Female   ☑ AGE 38

DATE OF BIRTH ▓▓▓▓   ☐ NATIONAL ORIGIN ___   ☐ RELIGION ___

DISABILITY ☐ Mental ___   ☐ Physical ___   ☐ REPRISAL ___ (Date(s) and type of prior EEO activity)

**10. EXPLAIN WHEN AND HOW YOU WERE DISCRIMINATED AGAINST** (If your complaint involves more than one basis of alleged discrimination, list and number each basis separately and provide specific factual information in support of each allegation of discrimination. If necessary, continue on page 2.)

I was Discriminated against on Dec 1 2004
By Personal of rr sercity force for being
younger than my attacker mrs. Larry fountan.
who assalted me by way of Hot coffie to
the face. larry was aNot detained, I was for
about 7 to 8 hours. was missled thrue out.

DA FORM 2590, FEB 2004   REPLACES DA FORM 2590-R, AUG 89, WHICH IS OBSOLETE.   PAGE 1 OF 3

Red DEO 07 Feb 2005

**EXHIBIT E**

PAYNE_00000318

EXPLAIN WHEN AND HOW YOU WERE DISCRIMINATED AGAINST (Cont'd) (If necessary, additional sheets may be used.)

the hole prosses. I was told of my guilt
. was garded by up to two armed people
was subjected to U.A. with armed guard
in short was held against will for long
poird of time. he had none of this, Just complaint

| 11a. NAME OF ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED | 11b. ADDRESS OF ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED |
|---|---|
| RR Provost Marshall | 100 main st texarkana TX. 75071000 |

12a. HAVE YOU DISCUSSED THE ISSUE(s) IN BLOCK 10 WITH AN EEO COUNSELOR?  ☐ NO  ☑ YES (If yes, complete 12b, 12c, and 12d below.)

| 12b. NAME OF EEO COUNSELOR | 12c. DATE OF INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 12d. DATE NOTICE OF RIGHT TO FILE A FORMAL COMPLAINT OF DISCRIMINATION RECEIVED (YYYYMMDD) |
|---|---|---|
| Joe Black | 1-26-05 | 2-7-05 |

13. ELECTION OF REPRESENTATION

☐ ATTORNEY  ☐ NON-ATTORNEY  ☐ NO REPRESENTATION

NAME OF REPRESENTATIVE  Robby Barrett

ADDRESS

ELEPHONE NUMBER: 334-2924   FAX:   E-MAIL:

WHAT RELIEF ARE YOU SEEKING TO RESOLVE THIS COMPLAINT? (State specific corrective action desired for each allegation.)

1. Apology from Robby Robertson & Coy. colmgn
2. Short time to removal for thier action for this type of thing
3. Chang in comander policy
4. personal apology from this comand to me & my family.

15a. HAVE THE ISSUES IDENTIFIED IN BLOCK 10 BEEN APPEALED TO THE MERIT SYSTEMS PROTECTION BOARD (MSPB) OR FILED UNDER A UNION NEGOTIATED GRIEVANCE PROCEDURE?  ☑ NO  ☐ YES (If yes, complete 15b, 15c, and 15d below.)

| 15b. ☐ MSPB  ☐ UNION NEGOTIATED GRIEVANCE | 15c. DATE FILED (YYYYMMDD) | 15d. MSPB OR UNION DOCKET NUMBER (If known) |
|---|---|---|

16. LIST NAME(s) OF WITNESS (ES) AND BRIEFLY STATE WHAT INFORMATION WITNESS MAY CONTRIBUTE TO THE INVESTIGATION OF YOUR COMPLAINT.

Cheif Dinsmor as to time held - 334-4177
witness to alteration - chad miccury (only witness)
gaed tover - transported me to clinic & Family
Sirvices.

| 'a. SIGNATURE OF COMPLAINANT | 17b. DATE DA FORM 2590 SIGNED BY COMPLAINANT (YYYYMMDD) |
|---|---|
| *(signature)* | 2-7-05 |

DA FORM 2590, FEB 2004

PAGE 2 OF 3

PAYNE_00000319

**SECTION II - TO BE COMPLETED BY THE PROCESSING EEO OFFICER (EEOO)**

| | | |
|---|---|---|
| **18a. NAME OF COMPLAINANT**<br>ERIC J. PAYNE | **18b. SOCIAL SECURITY NUMBER** | **18c. DA DOCKET NUMBER**<br>ARRRAD05JAN06581 |

**18d. TYPED/PRINTED NAME OF EEOO**
CHARLEAN J. CARROLL

**18f. EEOO TELEPHONE NUMBER**
829-3444/3595 Comm (903) 334-3444/3595

**18g. EEO OFFICE FAX NUMBER**
829-2983 Comm (903) 334-2983

**18h. EEOO E-MAIL ADDRESS**
Charlean.Carroll@redriver-ex.army.mil

**18e. ADDRESS OF EEO OFFICE (Complete address to include office symbol)**
RED RIVER ARMY DEPOT
ATTN: AMSTA-RR-E
100 MAIN DRIVE
TEXARKANA, TX 75507-5000

**18i. SIGNATURE OF EEOO**

**19a. DATE COMPLAINT RECEIVED (YYYYMMDD)**
20050207

**19b. METHOD OF DELIVERY**

[X] IN PERSON   [ ] MAIL (postmark date) (YYYYMMDD)

[ ] FAX   [ ] OTHER

**19c. DATE COMPLAINT DEEMED FILED (YYYYMMDD)**
20050207

**19d. DATE COMPLAINT ACCEPTED OR DISMISSED (YYYYMMDD)**
20050210

**20. IDENTIFY ISSUES IN BLOCK 10 BY PLACING AN A FOR ACCEPTED OR A D FOR DISMISSED IN APPLICABLE BOX(es)**

| | | | | |
|---|---|---|---|---|
| APPOINTMENT/HIRE | | EXAMINATION/TEST | | REINSTATEMENT |
| ASSIGNMENT OF DUTIES | | EVALUATION/APPRAISAL | | REPRIMAND |
| AWARDS | D | HARASSMENT (non-sexual) | | RETIREMENT/CONSTRUCTIVE DISCHARGE/RESIGNATION |
| CONVERSION TO FULL TIME | | HARASSMENT (sexual) | | SUSPENSION |
| DETAIL | | PAY/OVERTIME | | TERMINATION |
| DEMOTION | | PROMOTION/NON-SELECTION | | TIME AND ATTENDANCE |
| DISCIPLINARY ACTION (other) | | REASSIGNMENT-REQUEST DENIED | | TRAINING |
| DUTY HOURS | | REASSIGNMENT-DIRECTED | | TERMS/CONDITIONS OF EMPLOYMENT |

OTHER
(Specify)

**21. REMARKS**

DA FORM 2590, FEB 2004

PAGE 3 OF 3
APD V1 00

PAYNE_00000320



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY TANK-AUTOMOTIVE AND ARMAMENTS COMMAND
RED RIVER ARMY DEPOT
100 MAIN DRIVE
TEXARKANA, TEXAS 75507-5000

REPLY TO
ATTENTION OF

January 20, 2006

Civilian Personnel Advisory Center

Ms. Valerie Tumlinson
EMS/DSHS
Department State Health Service
1517 W. Front Street
Tyler, TX 75702

SUBJECT: Mr. Eric Payne, Firefighter (Basic Life Support)

Dear Ms. Tumlinson:

    Pursuant to our conversation on January 13, 2006, the following documents are submitted:

    a. **Enclosure 1.** Point Paper dated Sept 2, 2005- Subject: Suitability Issues regarding Mr. Eric Payne

    b. **Enclosure 2.** Decision Letter dated May 24, 2005 to effect suspension (7 days)

    c. **Enclosure 3.** Proposal Letter dated Jan 24, 2005 to suspend (7 days) for creating a disturbance (sanitized copy of letter)

    We understand Mr. Payne's certification is up for renewal at the end of January 2006. Request enclosed documents be reviewed and considered by the Enforcement Review Team as the chain of events may impact Mr. Payne's certification(s). The Point Paper clearly outlines events and behaviors that raise the issue of Mr. Payne's fitness for duty in his current job. Additionally, Mr. Payne's supervisor has advised our office that he is considering a fitness for duty physical for this employee.

    Request this review be accomplished as soon as possible. Point of Contact for this memorandum is Ms. Ivaria Bursey, Human Resources Specialist at phone 903.334.4260.

    Thank you for your assistance in this matter.

3 Enclosures

JOHNNIE F. HIGH
Director, Civilian Personnel Advisory
Center



**EXHIBIT**

F

POINT PAPER

PECP-SWR-W                    UNCLASSIFIED                    02 Sept 05

SUBJECT: Suitability Issues regarding Mr. Eric Payne

Mr. Payne was hired at the Depot in July 16, 2001

PURPOSE: Finalize Recommendations Regarding Suitability on Eric Payne

FACTS:

During the hiring process of 2001 and by way of a Form 306, Mr. Payne was asked if there were any instances during the past 10 years where he had been convicted, imprisoned, on probation or parole. He was also queried regarding firearms or explosives violations, misdemeanors and all other offenses. He was further asked if he had been fired from any job for any reason, or quit after being notified that he was to be fired or leave any job by mutual consent because of specific problems.

Mr. Payne listed that he had been stopped for traffic violation in 2000, and a concealed weapon charge. He indicated that the weapon was the property of his brother.

As with all new hires, Mr. Payne's papers were submitted to United States Office of Personnel Management for a background check. Prior to completion of the background check, Mr. Payne was suspended for fighting. During the process it was noted that Mr. Payne's temper and disposition left much to be desired. The Background check revealed the following:

       Oct 87 Possession of Marijuana – Bond Taken
       Jan 2000 Arrested for Possession Marijuana (Found Not guilty)
       Jan 2000 Charged/ found Guilty of Possession of Instrument of
          Crime
       Jan 2000 Charged/found guilty of carrying a prohibited Weapon .
       Feb 2000 Arrest for speeding – fine paid
       Sept 2000 Found Guilt of Assault and Battery
       Feb 2001 Terminated from Employment - Weyerhaeuser Paper
       Mill for being physically unable to do the job even with reasonable
          accommodations.
       Mar 2001 Rehired by Weyerhaeuser (03/02/01- -03/31/01). Again
          he was terminated. Reason for termination is listed as
           "Failed substance abuse test". Specific substance was
             not defined.
      2006 Suspended for fighting

*Final 1*

United States Office of Personnel Completed the Report of Investigation (ROI) was closed on June 6, 2003. The CPAC received the ROI on 28 Feb 05. During this time, we worked a suspension on Mr. Payne which is another instance of inability to control his temper and emotions.

Our policy is to provide the employee an opportunity to explain any omissions of derogatory information not revealed but found during the investigation. A meeting was scheduled with Mr. Payne. During the meeting, he became very agitated, walked out of the meeting and continued to check himself into a facility.

Upon his return to duty, the CPAC was advised not to make contact with Payne because he was unstable and was also on drugs for his nerves. After a considerable time, we made contact with Mr. Payne a second time to attempt to discuss the suitability issues. This time, we solicited the support of DTPMS. Mr. Payne was again very agitated, did not remain in his seat, made trip to bathroom, walked around the room and eventually left the meeting.

To date, we have been unsuccessful in completing the discussion of suitability issues with Mr. Payne.

We have made contact with the State Compliance Office for Firefighters to determine if Mr. Payne's certification for EMT is in jeopardy. We were advised that all of the above stated offenses should have been reported, even if no conviction occurred. We were further advised that the suspension for fighting should have been reported. The compliance office will initiate their investigation and act accordingly.

RECOMMENDATIONS:

In view of the aforementioned factors the following recommendations are provided for consideration:

Had the above listed information been available prior to hiring, Mr. Payne would not have been recommended for hire.

Management should immediately relieve Mr. Payne of all duties relating to EMT and Firefighting. Detail Mr. Payne to a set of duties pending final disposition of the review.

Initiate action to separate Mr. Payne due to falsification of information rendered during the in-hire process.

ACTION OFFICER:
JOHNNIE HIGH
EXT 3617

PAYNE_00000227

Copy



**To: Ms. Heather Godinez**
Voice: 1.512.834.6746
Fax number: 1.512.834.6713

**Date:** 3/26/2006

# A facsimile from

**Ms. Ivaria Bursey
RRAD Civilian Personnel
Advisory Center (CPAC)
903.334.4260
Fax 903.334.4344**

**Regarding:** Mr. Eric Payne

Comments: Information as requested:

1. Type of substance found in failed substance abuse test:  Specific substance was not identified in Weyerhaeuser test.

2. Employment after Mar 01 until employment at Red River Army Depot:

   Mar 2-31, 2001 – BE and K, PO Box 12606, Birmingham, AL  35202;
   April – Jul 15, 2001 – Unemployed; Hired RRAD Jul 16, 2001

3. Items failed to document on Form 306:  Jan 2000, Arrested for Possession Marijuana (Found Not Guilty); Feb 2000, Arrested for Speeding – fine paid; Sept 2000, Found Guilty of Assault and Battery; Feb 2001, Terminated from employment-Weyerhaeuser Paper Mill for being physically unable to do the job even with reasonable accommodations; Mar 2001, Rehired by Weyerhaeuser (3/2.01 – 3/31-01).  Again terminated.  Failed substance abuse test.  Specific substance was not defined.

4. Date returned to duty after in-patient at Living Hope facility:  Unavailable

I am also forwarding to you additional documentation (dated Mar 10, 2006) and received from Mr. Payne's supervisor on Mar 16, 2006.

I will be on travel 27-31 Mar 06.  I will be back in the office on April 3, 2006.  Should you need additional information during my absence, please contact Ms. Johnnie High, Director for CPAC, (903) 334.3617.

Thank you.

Note:   Fire Dept failed to provide date for Ques #4.
Requested 27-30 Mar 06 + 4 Apr 06. No response.



**EXHIBIT**

**G**

PAYNE_00001008

 **Weyerhaeuser**

Employee Service Center
PO Box 8777, EC3-1B2
Federal Way, WA  98063-9777
Tel (800) 833-0030
Fax (877) 942-0712

September 9, 2005

RE:   Eric Payne - ▓▓▓▓▓▓▓▓▓

To Whom It May Concern:

This letter is to confirm that we have no record of anyone named Eric Payne with the above social security number ever employed by Weyerhaeuser Company.

Sincerely,

*Kathy Sibson*

Kathy Sibson
Employee Service Center

EXHIBIT
tabbies
H

PAYNE_00001863

On Friday, March 3, 2006 at about 1000hr I noticed Mr. Payne coming down the hallway at Stat #1, not acting himself, heading to the Asst Chief's office. He went in and shut the door behind him. I followed him to the office and stopped at the closed door and listened for a minute to make sure everything was alright. Asst Chief Thornton opened the door and instructed me to get Mr. King and both of us report to his office. After finding Mr. King we arrived at his office to find Mr. Payne in a chair having what looked like to me an anxiety attack. He was jerking, shaking, slurring his words, crying and having difficulty breathing. We proceeded to try to calm him down. After about 45 minutes and a trip outer side for fresh air, Mr. Payne seemed to calm down and become more rational with our conversations. Mr. King asked Mr. Payne if there was anyone we could call that he could talk to. He said we could call his sister, so Mr. King called her to come and get him to take home. We were not comfortable letting him drive his self. Mr. Payne seemed more relaxed at this time and Mr. King said he would keep an eye on him till his sister arrived. At that time I returned to class.

Tommy Parker



EXHIBIT
I

PAYNE_00000443

I'm not sure of the time it happened but was sometimes after lunch. I was back in my office doing some paperwork. Eric came back in my office obviously stressed and collapsed into the floor. His breathing was rapid, body twitching and pulse racing. I bent over him hugged him to me and tried my best to calm and comfort him. After a few minutes of talking to him and getting his breathing under control I got him up into a chair. I was constantly talking to him trying to get him to relax and control his breathing. I went into the hall and called for Chris King one of our paramedics for assistance. Chris and Tommy both came to my aid and it became a team effort to help Eric regain his composure. His body was tense, and in spasm. Breathing was slowing down and he eventually go to a point to where he was able to communicate with us. I basically stood behind him with my arms on his shoulders while Chris took over patient treatment.

*Brad Thornton*
*Asst. Chief Red River Fire & EMS*
*903/334-3628  Fax 903/334-4166*
*100 Main Drive*
*Texarkana, TX 75507*

3/11/06

3-26-06

EXHIBIT
J

PAYNE_00000446

**Pagley, Andrew J Mr TACOM-RRAD**

| | |
|---|---|
| **From:** | Dinsmore, Bruce E Mr TACOM-RRAD |
| **Sent:** | Monday, March 06, 2006 9:04 AM |
| **To:** | Pagley, Andrew J Mr TACOM-RRAD |
| **Cc:** | Dinsmore, Bruce E Mr TACOM-RRAD |
| **Subject:** | Leave |

Chief,
    0935  6 March 2006 Eric Paynes Wife called stated that she was trying to get him into see the Doctor because of a anxiety attack Friday, 3 March 2006 at station #1. She had an appointment for Tuesday, 7 March 2006. At this Time Mr. Payne has a zero balance of leave.

**Bruce E Dinsmore**

**Asst Chief**

**Fire & Emergency Services Div**
office 903-334-3628
fax 903-334-4166



EXHIBIT

_K_

PAYNE_00000441

**Dinsmore, Bruce E Mr CIV USA AMC**

| | |
|---|---|
| **From:** | Dinsmore, Bruce E Mr TACOM-RRAD |
| **Sent:** | Monday, March 06, 2006 11:40 AM |
| **To:** | Pagley, Andrew J Mr TACOM-RRAD |
| **Cc:** | Dinsmore, Bruce E Mr TACOM-RRAD |
| **Subject:** | FW: Personnel |

Chief,

        The opinion I have is to move Mr. Payne to station #1 and place him in Dispatch at this time.

Bruce Dinsmore

Asst Chief

2nd Platoon

---

From: Miller, Michael L Mr TACOM-RRAD
Sent: Monday, March 06, 2006 11:31 AM
To: Dinsmore, Bruce E Mr TACOM-RRAD
Subject: Personnel


Bruce,


Please keep this confidential. The statement below was e-mailed to me from a concerned union member so I am forwarding it to you so you are aware of his concerns. I have taken the name off of the e-mail and pasted the body of the letter to protect the privacy of the member.


I would like to express my concern about the present situation involving Eric Payne.  I would like it to be known to my supervisors and union president that I am concerned about his mental stability.  I am put in a position where I have to spend many hours every week, mostly in a one on one situation, in a high stress job, and under more than difficult positions with Eric Payne.  I am concerned that if he doesn't have to ability to control his emotions under his present situation that I may be put into a situation that could cause me harm.  Eric has had several emotional breakdowns over the last few months and with his latest instant I am worried that it may spill over to his work with other members of the crew.  Understand that I feel when Eric shows up for work on a good day he is like anyone on the crew.  However with the events of the last few months I am concerned with which Eric will show up from day to day.  I am uncomfortable with how well he will be able to control himself with the stress he could encounter driving or in the back of the ambulance.

Understand I am not trying to get Eric fired by any means, I just feel that maybe he needs to get some help with his problems.  I would like the supervisors to know that others feel the same way but are not willing to come forward about their concerns at this time.

I want this to be kept confidential to avoid any problems that I may have with Eric in the future.

1

**EXHIBIT**

PAYNE_00000874

Memo:

10 March 2006  1210 hrs

Subject: Eric Payne Medical Condition and Leave

From Asst. Chief Bruce E. Dinsmore

    Eric Payne Fire Fighter/ EMT Brought in a Doctor Statement Friday 10 March 2006 From R. Paul Chandler D.O.  205 North Main Street Broken Bow Oklahoma. Noting that Mr. Payne was "Generalize Anxiety Disorder now manifesting itself in panic attacks and sleeps deprivation  Mr. Payne needs a leave of absent for 1 to 3 weeks."  Mr Payne stated that he was taking medication (did not know the name of the medication).

    I explained to Mr. Payne and His Wife that he had no leave and that LWOP means Leave with NO pay they both said that they understood this. I also advised Mr. Payne that when he returned to work that it would have to be during the week where he can clear through the clinic before returning to duty. Mr. Payne agreed and understood.

    I also advised Mr. Payne that upon his return to duty he would be working at  Fire Station #1.

Bruce E. Dinsmore
Asst. Fire Chief
2nd Platoon
RRADF&ES

Michael L. Miller
AFGE Local 1029
Union President





EXHIBIT

M

R. Paul Chandler, D.O.
105 N. Main
Broken Bow, OK 74728

## MULTI-SYSTEM EXAMINATION FORM

Name: *Eric Payne*   Date of Birth: ▓▓▓▓▓   Reviewed Date: *3 12 11 06*

Changes in ROS and/or PFSH are as follows: _____ No Change

CC and HPI Pertinent Info: *Requesting release to return to work*

Vitals: (3)  BP: Sitting R__/L__/__   Standing R__/L__/__   Supine R__/L__/__

P___ Reg __ IR   R *10*   T_____ Wt_____ Ht_____

PSFBS_____   PSRBS_____   O2 SATS_____

| Examination Detail | Pertinent Positives and Negatives |
| --- | --- |
| CONST: ☐ Well developed, well nourished, no acute distress | |
| EYES: ☐ Sclera white, conjunctivae clear. Lids are without lag. ☐ PERRLA. ☐ Discs flat, no hemorrhages or exudates noted. Vessels intact. | |
| EARS: ☐ No scars, lesions, or masses; ☐ Tympanic membranes translucent, non-bulging and mobile. Canal walls pink, without discharge. ☐ Hearing non-impaired. | |
| NOSE: ☐ Mucosa and turbinates pink, septum midline. | |
| MOUTH: ☐ Lips pink and symmetrical, gums pink, good dentition. | |
| THROAT: ☐ Oral mucosa pink and moist. Salivary glands intact. Soft and hard palates contiguous. Tongue moist, without ulcers. Gag reflex present. | |
| NECK: ☐ Full ROM, trachea midline position. ☐ No thyromegaly. | |
| RESP: ☐ Respiration even and unlabored. ☐ Lung fields. No flatness, dullness or hyper-resonance. ☐ Tactile fremitus absent. ☐ Clear/equal air sounds/adventitious sounds bilaterally. | |
| CARD: ☐ No lifts, heaves, or thrills. PMI present. S1 and S2 not exaggerated or diminished. ☐ RRR w/no murmur-rubs-gallops. No limbs throughout: ☐ Carotid pulses/pulse amplitude ___ ☐ Abdominal aorta ___ ☐ Femoral pulses/pulse amplitude ___ ☐ Pedal pulses within normal limits bilat., pulse amplitude ___ ☐ No edema, no varicosities. | |
| CHEST: ☐ Breasts symmetrical. ☐ No lumps, masses, discharge or skin changes. | |
| ABDOMEN: ☐ No masses or tenderness. Bowel sounds active x 4 quad. ☐ Liver and spleen are without tenderness or enlargement. ☐ No hernias. ☐ Rectal: Even sphincter tone, no hemorrhoids or masses. ___ Contra-indicated ___ Deferred ___ Refused | |
| ☐ Hemoccult negative/___ Contra-indicated | |
| MALE G/U: ☐ Scrotal, without tenderness, swelling or masses. ☐ No Penile discharge. CIRC ___ UNCIRC ___ ☐ Prostate, non-enlarged, symmetrical, without nodularity or tenderness. | |

MEDICATIONS: *Xanax 1mg 1 tab up to TID PRN*
*Wellbutrin 300mg 1 tab ___*

Color Code-it™ © 1987 NCCA, Inc.   Prob. Focused = 1 ✓   Exp. Prob. Focused = 6 ✓   Detailed = 12 ✓   Comprehensive = 2 ✓ is limited Areas
Only those elements determined to be medically necessary should be counted.

HealthCare Consultants of America, Inc. • 1054 Claussen Rd. Suite 307 • Augusta, Georgia 30907 • 706-738-2874 • 706-738-9839 Fax • 1-800-253-4945 Sales • info@hcca.magmutual.com   CC-0194-MU

*insidious harassment*

(J)

*1 of 2*



EXHIBIT
N

PAYNE_00001757

### MULTI-SYSTEM EXAMINATION FOR... (CONT.)

| Examination Detail | Pertinent Positives and Negatives |
|---|---|
| **FEMALE G/U:** ☐ No external masses, lesions, scars, rashes, or swelling of vulva. ☐ Labia, clitoris, vaginal orifice, and urethral meatus intact without discharge. ☐ Bladder, non-bulging, non-tender. ☐ Cervix pink and without lesions, odor, or discharge. ☐ Uterus midline, non-tender, firm and smooth. ☐ No internal pelvic masses or tenderness. | |
| **LYMPH:** Areas palpated not enlarged. (select 2) ☐ Neck ☐ Axillary ☐ Groin ☐ Other _____ | |
| **MUSCULO:** ☐ Gait coordinated and smooth. ☐ Digits are without clubbing or cyanosis. | |
| Minimum, **ONE** of the following 6 areas: ___ Head/Neck ___ Spine, Ribs and Pelvis ___ Right Upper Extremities ___ Left Upper Extremities ___ Right Lower Extremities ___ Left Lower Extremities | |
| **Findings:** ☐ No misalignment, defects or deformities. No subluxation. ☐ Joints with full ROM, no pain, crepitus or contraction. ☐ Joints intact. ☐ No muscle atrophy or weakness. | |
| **SKIN:** ☐ No rashes, lesions or ulcers. No discoloration. ☐ Warm and dry, normal turgor. | |
| **NEUROLOGIC:** ☐ Cranial nerves intact. ☐ Deep tendon reflexes 2+ bilaterally. ☐ Superficial touch and pain sensation intact bilaterally. | |
| **PSYCHIATRIC:** ☐ Judgement and insight are within normal limits. ☐ Alert and Oriented X 3. ☐ Recent and remote memory intact. ☐ No mood disorders noted, appropriate affect. | |

**Assessment:** _GAD_

**Plan:** _Cur XANAX 1mg_

**DATA REVIEWED**

**ALLERGIES:**

_NKDA_

**F/U:** _Marinol 5mg + TID B/D_

Signature: _____

Color Code-it™ © 1997 HCCA, Inc.   Prob. Focused = 1 ✓   Exp. Prob. Focused = 6 ✓   Detailed = 12 ✓   Comprehensive = 2 ✓'s from 9 Areas
Only those elements determined to be medically necessary should be counted.

HealthCare Consultants of America, Inc. • 1054 Claussen Rd · te 307 • Augusta, Georgia  30907 • 706-736-2078 • 706-736-91   ax • 1-800-253-4945 Sales • info@hcca.magnumxl.com   CCI 019.

PAUL CHANDLER, D.O.

N. MAIN.   BROKEN BOW, OK  74728

_2 of 2_

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

Patient: PAYNE, ERIC JAMES
Facility: Darnall ACH Ft. Hood

Date: 24 Mar 2006 0819 CST
Clinic: Red River Army Depot-Acute Care

Appt Type: ACUT
Provider: ANDRES, PATRICIO M

Patient Status: Outpatient

**Reason for Appointment:** Non-occup (RR)

**AutoCites Refreshed by ANDRES, PATRICIO M @ 24 Mar 2006 1058 CST**

Problems
No Problems Found.
**Active Medications**
No Active Medications Found.

Active Family History
No Active Family History Found.

Allergies
No Allergies Found.

**Screening Written by FLANERY, SCARLET @ 24 Mar 2006 0849 CST**
Reason For Appointment: Non-occup (RR)
Reason(s) For Visit (Chief Complaint): Returning To Work Requires Medical Department Clearance (New) : Employee here with medical documentation for returning to work status.;

**Vitals**
Vitals Written by FLANERY, SCARLET @ 24 Mar 2006 0849 CST
BP: 140/88 Adult Cuff, Left Arm, HR: 94 Radial Artery, Regular,

**Questionnaire AutoCites Refreshed by ANDRES, PATRICIO M @ 24 Mar 2006 1058 CST**
Questionnaires
No Questionnaires Found.

**SO Note Written by ANDRES, PATRICIO M @ 24 Mar 2006 1058 CST**
History of present illness
    The Patient is a 39 year old male.
        * Encounter Background Information: Hx as noted by OHN, RTW after treatment of "Anxiety Attacks," seem to be reacting to perceived threat of losing his job due to some alleged false allegation, seem to be emotionally overcomed at times. States had 4 drug test since working for RRAD, all negative. Was put on meds by his PMD to calm him down, i.e., Welbutren 300 mg every morning, Xanax, take only 1/2 of directed dose, and Marinol. Spent over 2-hours with him trying to listen to him and tried to counsel him. He was accompanied by co-worker/Union rep. Michael Miller.

**A/P Written by ANDRES, PATRICIO M @ 24 Mar 2006 1116 CST**
1. ANXIETY DISORDER NOS: Recurrent anxiety attacks, seem to be secondary to job-situational stress.

**Disposition Written by ANDRES, PATRICIO M @ 24 Mar 2006 1118 CST**
Released w/o Limitations
Follow up:  with PCM. - Comments: Patient want to go see his Professional Counselor. Advised to bring a letter from his counselor to RTW. Indivual counseling was provided.
120 minutes face-to-face/floor time..

**Note Written by FLANERY, SCARLET @ 24 Mar 2006 0849 CST**
A 39 yr. old male here for RTD status following abscence from duty. Doucmentaion brought in via Mike Miller fellow employee. Pt. is cooperative, but physically shaking at intervals with unsteady gait noted in getting up from chair to standing position. States he does know names of medication but feels like that is information that he and Dr. Andres need only to discuss. Employee states that he does not want PA to see him. Informed him that PA was no longer here and that Dr. Andres would be seeing him. Pt. requested to read documentation that was brought from FD and this is done. When asked if patient is ready to return to work he says "no." States that he has to support his "kids" so he "is ready to return to work." Pt. becomes anxious at intervals and has noted increase with breathing and increase in gait unsteadiness. Pt. is reassured by co-worker (Mike Miller) and attempts to calm down. Referred to Medical Officer. Co-worker asks pt. if he wants him to speak with Dr. Andres regarding events in the presence of pt. and he says "yes, you are the only person on this depot I can trust," so both are placed in exam room and Dr. Andres is notified.

Signed By ANDRES, PATRICIO M (Physician, RRAD) @ 24 Mar 2006 1118

---

| Name: PAYNE, ERIC JAMES | | | |
|---|---|---|---|
| FMP/SSN: | Sex:  M | Sponsor/SSN:  PAYNE, ERIC JAMES/574268497 | **EXHIBIT** |
| DOB: | Tel H:  580-420-6369 | Rank: | |
| PCat:  K57 DOD EMPL OCCUPATIONAL | Tel W:  433-2841 | Unit: | O |
| HEALTH | CS: | Outpt Rec. Rm: | |
| MC Status: | SWS: | PCM: | |
| Insurance:  No | | Tel. PCM: | |

STANDARD FORM 600 (REV. 5)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505
CHRONOLOGICAL RECORD OF MEDICAL CARE
THIS INFORMATION IS PROTECTED BY THE PRIVACY ACT OF 1974 (PL-93-579). UNAUTHORIZED ACCESS



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY TANK-AUTOMOTIVE AND ARMAMENTS COMMAND
REDRIVER ARMY DEPOT
100 MAIN DRIVE
TEXARKANA TX, 75607-5000

June 29, 2006

REPLY TO
ATTENTION OF.

AMSTA-RR-

Mr. Eric J. Payne
Directorate for Public Works
Fire and Emergency Services Division

Dear Mr. Payne:

I propose to remove you from your employment at this depot no earlier than 30 calendar days from the receipt of this notice. During your notice period, you will be detailed to a set of duties to be performed outside your officially assigned organization.

The specific reason for this proposed removal is your use of illegal drugs. The following facts are submitted in support of this proposed action and represent the matters against which you will have to defend yourself in replying to this proposal:

a. Lab results, dated June 21, 2006, indicated that you tested positive for THC Metabolite (marijuana).

b. You are assigned as a Firefighter (Basic Life Support). Your position meets the criteria for random drug testing under the Department of the Army Drug Free Federal Workplace Program. Performance of the duties in your position is sufficiently critical that screening to detect the presence of drugs is warranted as a requirement of your position.

The following additional facts were considered in support of your proposed removal.

a. As a Firefighter (Basic Life Support), GS-0081-07, assigned to PD Number DX182167, your assigned duties require you to serve as Driver-Operator of major motorized fire fighting equipment, perform fire protection inspections, maintenance, operational, housekeeping, emergency and standby duties, and perform non-professional medical care as an ambulance driver/emergency medical technician. Basic Life Support (BLS) duties require you to perform independently and render BLS first aid and life saving measures consisting of opening and maintaining oral airway; giving positive pressure ventilation; closed cardiac resuscitations; controlling of hemorrhage; treatment of shock without medication; immobilization of fractures, assisting in childbirth; management of mentally disturbed patients; and initial care of poison and burn patients. When necessary, emergency procedures are coordinated with the physician or the charge nurse via radio. You are required to perform standardized emergency medical/BLS procedures for critical, seriously and acutely ill patients; record temperature, pulse, blood pressure, respiration rate; observe neurological signs when appropriate; and recognize those signs which have specific bearing on patient's condition. Performing these critical duties after use of an illegal substance cannot be condoned. Your use of illegal drugs impairs your ability to perform your assigned duties in a safe manner. Further, this creates a safety hazard to your co-workers, depot employees, the general public and you.

EXHIBIT

P

tabbies

b. By letter dated January 24, 2005, management proposed to suspend you for 7 days for creating a disturbance. By letter dated May 24, 2005, management's decision was to suspend you for one workweek or 62.5 hours as the equivalent for Firefighters who do not work a normal 40 hour a week schedule.

c. The proposed penalty is consistent with the Department of the Army Table of Penalties for Various Offenses, AR 690-700, Chapter 751, Offense number 6c as it prescribes a range of penalties from written reprimand to 30 day suspension. Removal may be warranted if the safety of personnel or property is endangered. Your use of an illegal drug endangered not only you, but your co-workers, depot employees, equipment or vehicles for which you have responsibility.

d. Red River Army Depot Commander's Policy #60, Para 1 states, "It is the Army's policy and the policy of this installation that alcohol and drug abuse is clearly detrimental to the people and mission of Red River Army Depot and will not be tolerated". Therefore, I will enforce a zero tolerance for use,

e. The preamble to Presidential Executive Order 12564 (Drug-Free Federal Workplace) states in part, "The use of illegal drugs on or off duty, by Federal employees is inconsistent not only with the law abiding behavior expected of all citizens, but also with the special trust placed in such employees as servants of the public." Section 1 of the Executive Order is entitled Drug-Free Workplace and states "Federal employees are required to refrain from the use of illegal drugs."

You have the right to review the material on which this notice of removal is based. This material is on file in the Civilian Personnel Advisory Center, (CPAC) Bldg 303A. You also have the right to answer orally and in writing to this notice of proposed action and to furnish affidavits and other documentary evidence in support of your answer within 15 calendar days from receipt of this notice. You may be accompanied by a representative in replying to this proposed action. You will be allowed a reasonable amount of official time for reviewing the material relied on to support this proposed action, for preparing a written reply, for securing affidavits and other documentary evidence, and for making an oral reply. You should contact me to make arrangements for the use of official time allowed to prepare a reply. Your reply should be made to Mr. Larry F. Ford, Director for Public Works, Red River Army Depot, Texarkana, Texas 75507-5000.

As soon as possible after expiration of the 15 calendar day limit in which you have to reply, you will be furnished a written notice of decision. If you reply, your reply, along with the reason for the proposed action, will be considered before the final decision is made. If the action is to be effected, the written notice of final decision will be delivered to you prior to the effective date.

Mr. Walter Kennedy, Civilian Personnel Advisory Center, (CPAC) (903) 334-4175, will furnish you all the available information regarding procedures, applicable rules and regulations, and your rights, privileges and obligations.


ANDREW J. PAGLEY
Chief, Fire and Emergency Services Division

Attachment 7t



## SOLVAY
## PHARMACEUTICALS

July 12, 2006

Mr. Michael Miller
100 Main Dr.
Building 04
Texarkana TX 75507

Dear Mr. Miller:

Thank you for your inquiry regarding MARINOL®. The following provides information
you requested:
- Urine Testing - Patient Response

This information has been provided as a professional courtesy. Solvay
Pharmaceuticals, Inc. endorses the use of its products as specified in the approved
product labeling.

Should you have any questions or require additional information, you may contact us at
1-800-241-1643. For your convenience, prescribing information is enclosed.
Sincerely,

Eugene Roberson, RPh
Consultant Pharmacist

Enclosure: MARINOL® Prescribing Information

Solvay Pharmaceuticals, Inc.
901 Sawyer Road, Marietta, Georgia 30062   770/578-9000   Fax:  770/578-5597



Attachment 7c

## Urine Testing - Patient Response

MARINOL® (dronabinol) CIII Capsules are supplied as round, soft gelatin capsules containing either 2.5 mg, 5 mg, or 10 mg dronabinol for oral administration.[1] Dronabinol is synthetic delta-9-tetrahydrocannabinol (Δ-9-THC), a naturally occurring component of Cannabis sativa L. (marijuana). MARINOL® is indicated for the treatment of anorexia associated with weight loss in patients with Acquired Immune Deficiency Syndrome (AIDS) and for nausea and vomiting associated with cancer chemotherapy in patients who have failed to respond adequately to conventional antiemetic treatments.

MARINOL® is stored in the body's fat tissue and is slowly removed from the body. To remove MARINOL® from the body, the liver metabolizes or breaks MARINOL® down into metabolites. Metabolites are then eliminated in urine and feces which may be tested to see if MARINOL® is still in the body. Within 72 hours of dosing over half of a MARINOL® dose is eliminated from the body in feces, and 10% to 15% appears in the urine.[1]

It is difficult to say exactly how long metabolites of MARINOL® can be detected in the urine. Following single dose administration, low levels of dronabinol metabolites have been detected for more than five weeks in the urine and feces.[1] The length of time varies with a number of patient-specific factors, such as age, sex, weight, and medical history. The dose and the length of the treatment period also affect the length of time that metabolites of MARINOL® are present in the urine. Furthermore, some tests used to detect MARINOL® are more sensitive than others.

A group of researchers conducted a study to determine how long a MARINOL® metabolite can be found in the urine after short-term dosing.[2] They asked six men and six women to take MARINOL® 2.5 mg twice a day for five days, and the researchers regularly checked the volunteers' urine for over a month, starting with the first day of treatment. Although the amount of the metabolite in the urine started to decrease two days after the last dose, the urine test remained positive for the metabolite in several people longer than one week after their last dose. In one patient, the metabolite was detected eight days after the last dose.

In summary, it is not possible to predict with absolute certainty the exact timeframe within which one may expect all metabolites of MARINOL® to be fully undetectable in urine. When MARINOL® is taken for a longer period of time than described in the study above, it may take longer for the body to eliminate the metabolites. Please consult your health care professional for more information regarding testing for MARINOL® and metabolites in the urine.

MARINOL® is contraindicated in any patient who has a history of hypersensitivity to any cannabinoid or sesame oil.[1] Patients receiving treatment with MARINOL® Capsules should be specifically warned not to drive, operate machinery, or engage in any hazardous activity until it is established that they are able to tolerate the medication and to perform such tasks safely. A cannabinoid dose-related "high" (easy laughing, elation and heightened awareness) has been reported by patients receiving MARINOL® in both the antiemetic (24%) and the lower dose appetite stimulant clinical trials (8%). Other



Eric Payne ████████████

Attn:

Enclosure 2



EXHIBIT
R

14 Sept 06        Bldg 421

MEETING FOR E PAYNE

| | | | |
|---|---|---|---|
| G. Paulson | LEGAL | 1401 | Begin |
| I. Bursey | CPAC | 1402 | Online Counsel |
| L. Ford | Dr. DPN | | Fax AFTER MEETING |
| E. Payne | | 1403 | List of Objections |
| J. Payne | | | From Public Counsel |
| M. Miller | AFGE Pres | 1405 | Counsel STATES LAW |
| M. Harmon | AFGE Sec. | | governing Removal |
| | | | of government Employee |
| CELEN Berg | Counsel | 1406 | List of Possible other |
| | | | punishment that can |
| | | | be used given by |
| | | | Counsel |
| | | 1407 | Discrepancies in drug |
| | | | testing Account |
| | | 1410 | Diviation of expected |
| | | | Practise of drug testing |

EXHIBIT
S

PAYNE_00000152

Removal on day of test results
No Credible Evidence
Harrassment
Caused Axidy Disorder
March 24 2006 made Agency
aware of meds - for weight Loss
Explanation of the drug Marinax
Explanation of Drug testing
Protocols that have been
refused to E Payne
1413 END of Statement
        by Payne's Counsel
1414 E Payne has nothing
        to Add
1415 Verifying Fax #
1415 L Ford States After
        Review of Documents
        of Fax — Will get
        Statement to mr Payne
        Promptly.

PAYNE_00000153

1416 PAYNE STATES he
WAS WRANGED FOR 2years
WANTS ACTION TAKEN against
party Responsible

1417 MEETING ADJOURNED

**Ford, Larry R Mr TACOM-RRAD**

| | |
|---|---|
| From: | Ford, Larry R Mr TACOM-RRAD |
| Sent: | Thursday, September 21, 2006 4:21 PM |
| To: | 'John Cametas' |
| Cc: | Paulson, Craig T Mr TACOM-RRAD |
| Subject: | RE: 9-21-2006.PDF |

Thank you very much for the information. In reviewing this information I see that you have not been able to speak with the Mr. Payne's treating physician even though you have made several attempts. I really need for you to make that contact and verify whether Mr. Payne was taking prescribed Marinol on the date that he provided the specimen. Would you please try to get in touch with the treating physician again so that we can confirm or deny that he was taking this medication under the doctor's care?
I appreciate your extra effort on this.

Larry R. Ford
Director of Public Works

**From:** John Cametas [mailto:JCametas@pembrooke.com]
**Sent:** Thursday, September 21, 2006 2:29 PM
**To:** larry.r.ford@us.army.mil
**Subject:** 9-21-2006.PDF

additional info

9/21/2006



PAYNE_00000654

Eric Payne                                    9/26/06

Returned call to Dr. Cametas Clembrooke. Dr. Cametas
indicated that he was finally able to catch the doctor whose
name was on the Marinol prescription that Mr. Payne
provided. That doctor indicated that he had given Eric
the prescription because Eric was depressed. Dr. Cametas
indicated that Marinol is not normally prescribed for
depression but was prescribed for cancer patients with
eating problems.

Dr. Cametas contacted Eric to get his permission to
review the records showing when the medication was
prescribed + when it was filled. Dr. Cametas indicated
that Eric told him that he had a lawyer and the
doctor should go through him. Dr. Cametas indicated
that he was just trying to confirm the prescription
so that he could reverse the results if appropriate.
Dr. Cametas indicated that Eric was very short
and told him not to bother him again.

Dr. Cametas told me that if Eric's lawyer could give him
the doctor's records, (treating doctor) and they confirmed
that he was on that drug (Marinol) under the doctor's care
at the time that he provided the specimen, it would
affect the positive finding report.



EXHIBIT
U

PAYNE_00000653

# MRO Detail Report

10/2/2006 10:30:57 AM

**Customer Information:**

Customer: 2882 - DEPARTMENT OF INTERIOR CONTRACT
Location: RRAD - ACSAP: RRAD
Main Contact: KIMBERLY STEWART Phone Number: 9033343504

**Employee Information:**

Employee: ▮▮▮▮▮▮PAYNE,ERIC.

**Drug Test Information:**

Specimen ID/Accession ID: CA00153081-0606          Date Collected: 5/31/2006 1:03:00 AM
COC/Specimen ID: 0148520                            Date Received: 6/1/2006
Reason: Other                                       Date Loaded: 6/6/2006 5:33:00 PM
Lab: FTMEADE                                        Date Paperwork: 5/31/2006
Lab Status:   POSITIVE

**Positive Drugs**

| Order Test Code | Test Name | Result |
|---|---|---|
| THC | THC Metabolite | 0000018.000 |

**Lab Comments**

DIRECTLY OBSERVED BY OFCR GERALD TAVE
OBSERVATION REQUIRED

**Specimen Status History**

| Date/Time | Userid | Old Status | New Status |
|---|---|---|---|
| 6/14/2006 11:38:00 AM | POHJWADE | Waiting on Paperwork | On Review |
| 6/21/2006 10:08:00 AM | POHJWADE | On Review | Positive |

**Employee Call Comments**

| Date | User Id | Result | Notes |
|---|---|---|---|
| 6/14/2006 11:38 AM | POHJWADE | Left Message | With male who answered. |
| 6/15/2006 9:13 AM | POHJWADE | Made Contact | Transferred to Dr. Vaughan. |
| 6/15/2006 9:13 AM | POHJWADE | Made Contact | Donor faxing rx for Marinol. |
| 6/15/2006 5:43 PM | POHTLIPSCOMB | Verifying RX | recvd marinol from 12/14/2004 spoke with donor adv to get letter from dr. or recent rx |
| 6/21/2006 10:07 AM | POHJWADE | DER Contact | Reported To Rhonda. |
| 6/21/2006 1:21 PM | POHDGITTMAN | Made Contact | donor called back again, said he left a message on someone's voice mail regarding Marinol RX. Says he can't get Dr note till 6/27. I informed him that the test had been made positive and reported and he started getting really upset because we were "messing with his livlihood". Then he |



EXHIBIT
V

MRODetailReport                                                                                    Page 2 of 2

|  |  |  | made a threat to bypass us by going directly to dept he worked for. |
|---|---|---|---|
| 6/23/2006 3:42 PM | POHTLIPSCOMB | Verifying RX | recvd letter from "Dr" clld dr. office to veri but office close @ noon on fri. will cll on mon  to veri letter we recvd |
| 6/26/2006 9:29 AM | POHTLIPSCOMB | Misc | clld dr  office to veri left mess. with thelma to have the nurse cll 1167 |
| 6/26/2006 11:27 AM | POHTLIPSCOMB | Verifying RX | cll dr. office to veri /spoke with thelma says that she will give angel # to call when she gets in the office |
| 6/26/2006 1:22 PM | POHPLANNEAU | Made Contact | DONOR CALLED TO SEE IF DOC'S OFFICE CALLED |
| 6/27/2006 9:26 AM | POHTLIPSCOMB | Verifying RX | spoke with angel says will fax dr. notes to veri rx |
| 6/27/2006 4:55 PM | POHTLIPSCOMB | Misc | angel clld back transfer to dr. vaughan says she cou'dn't find notes in chart regarding use of marinol |
| 7/5/2006 9:09 AM | POHJWADE | Misc | Advised donor we had not spoken with the Doctor. |
| 8/18/2006 8:39 AM | POHJWADE | Misc | Litigation package ordered per request of Ronda Bowers |
| 8/28/2006 10:36 AM | POHJWADE | Misc | Emailed Ronda. |
| 9/22/2006 3:13 PM | POHJWADE | Misc | Donor called and states not to call his residence any more forward all questions to his lawyer in writing. |

**Donor Questions**


**MRO's Comments**

Date                          UserId                          Result


_____        _____

Final MRO Result                              John G. Cametas



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY TACOM LIFE CYCLE MANAGEMENT COMMAND
RED RIVER ARMY DEPOT
100 MAIN DRIVE
TEXARKANA, TX 75507-5000

REPLY TO
ATTENTION OF:

AMSTAA-RR-O

Mr. Eric J. Payne
Directorate for Emergency Services
Fire and Emergency Services Division

Dear Mr. Payne:

Reference is made to the Notice of Proposed Removal, dated July 3, 2006, and amendment dated August 11, 2006, proposing to remove you from employment at Red River Army Depot. The specific reason for the proposed removal is your use of illegal drugs. The Notice of Proposed Removal and subsequent amendment were received by you on July 3, 2006, and August 19, 2006, respectively.

You were afforded 15 calendar days (along with approved extensions) in which to reply orally, in writing, or both to the Notice of Proposed Removal. On September 14, 2006, your attorney offered both oral (via telephone) and written (via fax) replies. I have fully and impartially considered your reply and the reasons and specifications contained in the Notice of Proposed Removal in deciding this action. I have taken into account, not only the charge above, but I have considered aggravating factors such as the nature and seriousness of the offense.

As a Firefighter, Basic Life Support (BLS), GS-081-07, assigned to PD Number DX 182167, your assigned duties require you to serve as Driver-Operator of major motorized fire fighting equipment. You are required to perform fire protection inspections, maintenance, operational, housekeeping, emergency and standby duties, and non-professional medical care as an ambulance driver/emergency medical technician. BLS duties require you to perform independently to render first aid and life saving services consisting of opening/maintaining oral airways; giving positive pressure ventilation; closed cardiac resuscitations; controlling of hemorrhages; treatment of shock without medication; immobilization of fractures; assistance in childbirth; management of mentally disturbed patients; and initial care of poison and burn patients. When necessary, emergency procedures are coordinated with physicians or charge nurses via radio. You are required to perform standardized emergency medical/BLS procedures for critical, seriously and acutely ill patients. You are required to record temperatures, pulse, blood pressure, and respiration rates; observe neurological signs, when appropriate; and recognize those signs which have specific bearing on a patient's condition. The performance of these duties after use of an illegal substance cannot be condoned. Your use of illegal drugs impairs your ability to perform your assigned duties in a safe manner. Further, this creates a safety hazard for your co-workers, depot employees, the general public and you. You are assigned to a Test Designated Position (TDP). As such, you are held to a higher standard because your job requires

**EXHIBIT**
W

PAYNE_00000750

2

random drug testing.  Your drug test results indicate to me that you cannot or will not take the necessary actions to demonstrate that you can uphold the requirements of your job and abstain from illegal drug use. The positive drug test indicates Delta 9 - Tetrahydrocannabinol (THC), also known as marijuana, was in your system and that you failed to exercise prudent judgment in using a drug that is known to affect your ability to perform the duties of your position.  Your attorney offered in his reply that the agency was aware since March 24, 2006 that you were using the legal prescription drug Marinol.  Further, he replied "Executive Order 12564, Section 4(b), Drug Testing Procedure, states that before conducting a drug test, the agency shall inform the employee to be tested of the opportunity to submit medical documentation that may support a legitimate use for a specific drug". Although, you verbally advised the physician at the U.S. Army Health Clinic that you were taking Marinol, the burden of proof was on you to submit medical documentation to drug testing officials in support of your claim to taking Marinol.  Inasmuch as you were subjected to previous drug testing, you knew or should have known what your responsibilities were as they relate to supporting documentation for use of a specific drug.  After receipt of your positive test results, records reflect you contacted a representative of Pembrooke Laboratory and left voice mail regarding your claim to prescribed Marinol. You were advised of what was needed (a letter from physician or recent prescription) to support your claim.  On or about June 23, 2006, Pembrooke Laboratory received what appeared to be a note from a physician who stated that you were his patient and currently being treated with Marinol.  Lab representatives tried on several occasions to contact the physician to verify the note; however, they were unsuccessful and later spoke with the nurse.  The nurse offered to verify the note but was unable to do so and advised the lab representative that she could not find any notes in the chart regarding your use of Marinol.  You were advised of these events; yet, you failed to assist the lab in resolving the verification issue.  Instead, you called the lab and told the representatives not to call your residence anymore.  You are reminded again that the responsibility rests with you to provide acceptable documentation to support a legitimate use for a specific drug.  Your use of an illegal drug greatly diminishes your ability to perform your duties in a safe manner and keep others out of harm's way.  Your behavior, as described above, created a breach of trust between you and your co-workers who rely on you to effectively perform your job.  I also considered your employment at RRAD.  I would expect your years of experience and knowledge to serve as a positive role model for those who have recently joined the ranks of the RRAD workforce.

I find that the incidents described in paragraph 2 of the Notice of Proposed Removal are fully supported by a preponderance of the evidence, are sustained, and warrant your removal.  Your use of illegal drugs interferes with mission accomplishment and your removal, therefore, will promote the efficiency of the Service.

It is my decision that you be removed effective December 7, 2006 for use of illegal drugs.  A Standard Form 50, Notification of Personnel Action, effecting your removal is forthcoming under separate correspondence.

PAYNE_00000751

3

You have a right to appeal this action to the Merit Systems Protection Board (MSPB), 1100 Commerce Street, Dallas, Texas 75242. Your appeal must comply with MSPB regulations (5 Code of Federal Regulations Parts 1201, 1208 and 1209) which are available at the MSPB website, **www.mspb.gov**. You may be represented by a representative of your choice in filing an appeal. If you elect, you must file your appeal with the MSPB during the period beginning with the day after the effective date of the removal until not later than 30 days after the effective date. This 30-day period for filing an appeal will be extended an additional 30 days (for a total of 60 days) if, prior to your filing a formal appeal, you and this agency agree, in writing, to attempt to resolve this matter through an alternative dispute resolution process.

If you wish to read regulations pertinent to this decision or obtain further information about your procedural rights, you may contact the CPAC POC, Ms. Rita Wiggins, Human Resources Specialist, building 303A. Ms. Wiggins may be contacted at 903.334.4287.

LARRY R. FORD
Director for Public Works

ACKNOWLEDGEMENT OF RECEIPT:

Eric J. Payne          11-30-06
                       Date